## Boggs & Russell *vs.* Martin.

### ERROR TO THE JEFFERSON CIRCUIT.

Judge SIMPSON delivered the opinion of the court.

REPLEVIN.

Case 23.

September 28.

13bm238
108 127
13bm238
e116 885
13bm238
e116 885

1. By the modern doctrine, in many cases a defendant sued for the price of goods, or for work to be performed, even where a certain price is agreed upon, may show the insufficiency of the goods, or an imperfect performance of the work, to reduce the amount of recovery. (*Culver* v. *Blake & Co.* 6 *B. Monroe,* 528.)

2. Where a carrier, by his undertaking, agrees to carry and deliver in good order, and the goods to be conveyed shall be damaged, the consignee may show the fact, and withhold the amount from the carrier out of the price agreed to be paid for the freightage.

3. When there is no special contract to the contrary, a carrier has a lien upon goods conveyed, and may detain the whole or a part until the freight is paid; (*Abbott on Shipping,* 247,) but if the whole be delivered, the lien ceases. (*Ib.* 248.)

4. Where goods were forwarded to a commission merchant by a steamboat, unloaded and placed on the wharf, and the bill of lading sent to the owner, who removed part of the goods without paying freight—held, that these facts did not amount to a delivery of all the goods, nor a waiver of the lien for freight, unless it was so intended, of which a jury is to judge.

*Case stated, and judgment of the circuit court.*

This action of replevin was brought by Martin against Boggs & Russell for ninety-three barrels of pitch and rosin.

The property sued for was shipped at New Orleans on the steamboat Cincinnatus, to be delivered at the port of Louisville, to the plaintiff, he paying fright for the same at the rate of thirty-seven cents per barrel.

The defendants in the action were the agents of the steamboat, and upon her arrival at Louisville, the rosin and pitch (of which there were altogether one hundred barrels,) were unloaded and placed upon the wharf under their charge. The bill of lading was sent to the plaintiff as consignee, and seven barrels of the pitch and rosin had been taken to his store by persons in his employment, and by his directions, before any controversy arose between him and the agents of the boat, about the payment of the freight. He then refused to pay the freight, upon the ground that the articles were not delivered in good order; that he had a right to deduct from the amount of the freight.

Boggs &
Russell
vs.
Martin.

the damage that has been sustained in consequence thereof, and was only bound to pay the balance, whatever it might be, after such deduction had been made. The agents of the boat insisted that the articles were delivered in good order, and refused to permit him to remove any more of them, unless he would pay the whole of the freight, which he declined doing, and, thereupon, they had the other ninety-seven barrels hauled to, and stored in their warehouse.

The plaintiff then brought this action against them, in which he recovered a judgment in the circuit court; and they have brought the case to this court to reverse that judgment.

Two questions arise upon the record: 1. Had the plaintiff a right to introduce testimony upon the trial to prove that the articles sued for were not in good order when delivered? 2. Had the defendants done any act which amounted, in law, to a waiver of the carrier's lien upon the goods for the payment of the freight?

*Questions presented for decision.*

1. The modern doctrine is that a defendant may, in many instances, to prevent unnecessary litigation, when sued on a contract for the price of goods, or work and labor performed, even where a specific sum were agreed upon, show the insufficiency of the goods, or incomplete or imperfect performance of the work, to reduce the price and diminish the amount of the plaintiff's recovery. (*Culver* v. *Blake & Co.* 6 B. *Monroe*, 528.) If this doctrine be applicable in the case of a contract for freight, then a consignee may refuse to pay the freight if the goods have been damaged by the carrier, unless a reasonable deduction be made for the injury; and the carrier's lien may be diminished, or totally destroyed, by proof that the injury to the goods exceeds the sum due on the contract for freight.

*1. By the modern doctrine, in many cases, a defendant sued for the price of goods, or for work to be performed, even where a certain price is agreed upon, may show the insufficiency of the goods, or an imperfect performance of the work, to reduce the amount of recovery. (Culver v. Blake & Co. 6 B. Monroe, 528.)*

In a treatise upon shipping by Abbott, the author argues in favor of the proposition, that where the goods arrive at the port of destination, although they may be in so damaged a state as to be of no value,

the owner of them is not at liberty to abandon them for the freight; but the ship owner is entitled to recover full freight for the voyage. He admits, however, that different opinions upon the question have prevailed in the courts in England, and that there is no judicial decision upon it in the books. (*Abbott on Shipping,* 292.) The question, however, seems to have been so decided in New York, in the case of *Griswold* v. *New York Insurance Company,* 3 *John. Rep.* 321.

The doctrine in England is, that if the goods have been damaged by the fault of the master or crew in the voyage, the remedy for the merchant who has received them, is an action for the damage. (*Abbott,* 293.) But if he has received the goods, he cannot insist upon the damage as a defense to an action brought against him for the freight, even although he has offered to return them. This doctrine, however, seems to be based upon the terms of the charter party or bill of lading, upon which the freight is made payable. It becomes due and payable according to these terms, upon the delivery of the goods, without regard to their condition at the time, provided there be a complete delivery of the entire quantity contained in the bill of lading.

It was upon this principle that it was decided in the case of *Griswold* v. *New York Insurance company,* (*supra,*) that the owner could not abandon the cargo, and thereby discharge himself from the payment of the freight. The ship owner, it was held, had performed his engagement when he carried and delivered the goods. The condition that was to precede payment was then fulfilled. The state of the article at the end of the voyage had nothing to do with the obligation of the contract. The owner was, therefore, personally responsible for the freight, by the terms of the contract, whether the cargo, when delivered at the place of destination, was of any value or not, if the ship owner had conducted himself with fidelity and vigilance in the course of the voyage.

Boggs &
Russell
*vs.*
Martin.

2. Where a
carrier, by his
undertaking, a-
grees to carry
and deliver in
good order, and
the goods to be
conveyed shall
be damaged,
the consignee
may show the
fact, and with-
hold the amount
from the carrier
out of the price
agreed to be
paid for the
freightage.

But in this case, the obligation imposed by the terms of the bill of lading was more comprehensive, and required not only the delivery of the goods at the port of Louisville, but their delivery in good order and condition, (the dangers of the navigation and fire only excepted.) The condition upon which the carrier became entitled to the payment of the freight, was the delivery of the articles in good order and condition. If, when delivered, the property was not in good order and condition, the carrier was responsible by the terms of the contract, unless the damage resulted from fire, or the dangers of the navigation.

If the carriers were liable on account of any damage the goods had sustained, there seems to be no good reason why they should be permitted to recover the full amount of the compensation they would have been entitled to if their contract had been strictly complied with, and the consignee be compelled to resort to a cross action to obtain redress for the injury to the goods. To prevent circuity of actions and unnecessary litigation, the modern doctrine alluded to has been allowed to prevail, by which a defendant, when sued for the stipulated price of services rendered, is permitted to show the imperfect or defective performance of the services to reduce the price he agreed to pay for them. Upon the same principle, the consignee in the present case had a right to prove, for the purpose of reducing the amount of freight due to the carriers, that the articles had not been delivered in good order. As the defendants claimed the right to retain the possession of the goods until the freight due was paid, the plaintiff had a right to introduce proof to show the extent of the damage to the goods, for the purpose of reducing the amount of the freight actually due, or making it appear that nothing was due on that account, thereby manifesting that the defendants had no right to the possession of the goods. And as the consignee contended that he had made a tender before the suit was brought, of as much freight as was actually due, evidence of the condition of the

goods and the damage they had sustained, was admissible for the purpose of showing that the amount tendered was sufficient to have discharged the freight actually due, and that by the tender the lien had been removed.

2. Where there is no special contract to the contrary, the carrier has a lien upon the goods, and a right of detention until the freight is paid, and he may detain any part of the merchandise contained in the same bill of lading, and consigned to the same person, until the freight upon the whole of it be paid. (*Abbott on Shipping*, 247.) But if he once parts with the possession out of the hands of himself and his agents, he loses his lien or hold upon the goods, and cannot afterwards reclaim them. (*Ib.* 248.)

The question in this case upon the evidence was, had the goods passed out of the hands of the agents of the boat, and the lien upon them for the payment of the freight been thereby lost.

Upon this point the court below instructed the jury —"If they believed from the evidence that the rosin " and pitch were put out of the steamboat on the wharf " in Louisville, and the bill of lading was sent to the " plaintiff, and he took possession of and hauled " away one load or any part of the rosin and pitch " with the consent of the defendants, these facts them- " selves constituted, in law, a delivery or possession, " and the lien for the freight was thereby lost."

This exposition of the law we deem erroneous, for the following reasons:

The goods, although put out of the steamboat on the wharf, were still in the possession of the agents of the boat, as it clearly appeared from the testimony; and the act of unloading a boat, and placing the merchandise on the wharf does not indicate any intention to part with the possession of it until the freight is paid. Indeed, the law is, that the officers cannot detain the goods on board the boat until the freight is paid, as the merchant or consignee would then

paying freight
—held, that
these facts did
not amount to
a delivery of all
the goods, nor
a waiver of the
lien for freight,
unless it was so
intended, of
which a jury is
to judge.

have no opportunity of examining their condition, (*Abbott*, 248.)

It was the duty of the carriers to send the bill of lading to the consignee, to apprize him that the goods had arrived, and were ready to be delivered, so that he could attend and examine their condition, pay the freight due, and take them into his possession. Sending the bill of lading to him, therefore, amounted to nothing more than a communication of the fact that the goods had arrived, and an offer to deliver them upon the payment of the freight. No other inference arises from the act, nor could it justly create an implication that the delivery of the bill of lading was intended to operate as a waiver of the lien for the freight, and a delivery of the possession of the goods to the consignee.

As the master may detain any part of the merchandise for the freight of all that is consigned to the same person, and as, if he make a delivery of part to the consignee, he may retain the residue even against a purchaser until payment of the freight of the whole, (*Sodergreen* v. *Flight*, cited in 6 *East. R.* 622,) the delivery in the present case of the seven barrels of the pitch and rosin, did not necessarily constitute a delivery of the whole to the consignee. A delivery of part will, in some cases, amount to the delivery of the whole; but whether it is in a particular case to have that effect or not, will depend upon the intention with which the act was done. The seven barrels were no doubt allowed to be taken, under the belief that the freight would be paid without objection; but the permission to take the possession of part, did not amount to a waiver of the lien upon the residue by legal implication, nor to a constructive delivery of that residue to the consignee, unless it was given with that intention, which was a matter of fact for the jury to determine.

These acts, therefore, neither separately nor in conjunction constituted, by legal deduction, a delivery of

the possession of the whole of the goods to the plaintiff.

Wherefore, for the error of the court in its instruction to the jury, the judgment is reversed, and cause remanded for a new trial, and further proceedings consistent with this opinion.

*Morris*, for plaintiffs; *Haggin* and *Harris*, for defendant.