Thomas v. Frankfort & Cincinnati Railway Co.

CASE. 93—ACTION BY CLAUDE THOMAS AGAINST F. & C. RAILWAY COMPANY FOR THE POSSESSION OF CERTAIN CATTLE.—NOV. 24.

# Thomas v. Frankfort & Cincinnati Ry. Co.

APPEAL FROM BOURBON CIRCUIT COURT.

JUDGMENT FOR DEFENDANT AND PLAINTIFF APPEALS. AFFIRMED.

RAILROADS—FREIGHT CHARGES— CONTRACT— RATIFICATION— LIEN— CHARGES ADVANCED—NEGLIGENCE OF CONNECTING CARRIER.

Held: 1. The acceptance by a railroad company of cars of freight from the initial carrier thereof does not operate as a ratification of an oral contract between the initial carrier and the consignor to carry the goods for less than the usual rate.

2. Where a common carrier accepts freight without special contract as to the rate to be charged, the law implies an undertaking to charge the usual rate.

3. A carrier has a lien on freight transported by it for the usual charges of such transportation.

4. A common carrier's lien for charges of transportation includes charges which it may have advanced to a preceding carrier.

5. A common carrier's lien for transportation charges is not affected by the fact that the previous carrier has been in default by reason of damage to the goods.

6. In the absence of a special contract to deliver freight at a point beyond its line, a common carrier is not liable for negligence occurring after its delivery of the freight to a connecting carrier.

McMILLAN & TALBOTT FOR APPELLANT.

The plaintiff contends:

1. That the court erred in sustaining a demurrer to his reply which contained a traverse of material allegations in the answer—for example, a traverse of the allegation that appellee had paid freight charges to its connecting railroad line.

2. That the court erred in disregarding the reply (treating it on demurrer as utterly ineffectual for any purpose) and in rendering judgment for appellee without any proof in the face of such denial or traverse in the reply.

3. That the court erred in sustaining a demurrer to his reply and rejecting the whole of the reply when it set up affirm

atively that by contract it was not to pay more than $180 for freight charges.

4. That the court erred in not treating so much of the reply as set out the contract of shipment and the breach thereof as a defense to the claim for freight, at least to the amount of such freight.

5. The court erred in rendering personal judgment when there was no allegation showing a personal liability.

6. The answer is more in the nature of a set-off than a counterclaim, and a counterclaim in the reply was therefore permissible, hence not only damages to the amount of the freight, but all of the damages that could be established should have been considered.

7. The counterclaim or set-off in the answer should not be allowed in an action of this nature and the appellee should be limited to alleging and showing his freight lien merely for the purpose of defeating the action for immediate possession.

8. Even if such a counterclaim or set-off can be allowed in an action of this nature, the counterclaim or set-off herein is bad on demurrer in failing to set out the contract of shipment and performance thereof.

Wherefore, appellant prays a reversal of the judgment herein, for costs and all proper relief.

### AUTHORITIES.

1. For a case pleading a counterclaim against a counterclaim, see Nutter against Johnson, 80 Ky., 426.

2. Misnomer in calling a set-off a counterclaim or a counter-claim a set-off, does not affect the rights of the parties. Civil Code, sec. 97, subsec. 4.

3. For authority to the effect that appellant had the right to allege and prove the contract of shipment and the violation thereof as a defense against appellee's claim for freight charges, and that to the extent of such freight charges such contention of appellant was defensive only and not in reality a counterclaim and set-off. See quotation in brief from Boggs & Russell against Martin, 13 B. Monroe, 242.

D. W. LINDSEY, JOHN B. LINDSEY and JOHN S. SMITH, ATTORNEYS FOR APPELLEES.

1. The contract of shipment is not questioned, and hence is obligatory on the plaintiff.

2. Plaintiff had to comply with his contract including the payment of the freight charges against the cattle before he

Thomas v. Frankfort & Cincinnati Railway Co.

could demand their possession or aver a breach of the contract by any of the railway companies.

3. A railroad company in possession of freight, in delivering it to a connecting line, acts as the agent of the consignee who can not question the act of the connecting line in the pre-payment of the charges on receiving the freight, and the carrier had a lien on the freight for its own charges and for those it advanced.

## AUTHORITIES.

1. Validity of the contract of carriage. Adams Express Co. v. Loeb, 7 Bush, 500; L. & N. R. R. Co. v. Brownlee, 14 Bush, 590; Southerland v. National Bank, 75 Ky., 250.

2. Any right of action of appellant is only under the contract of carriage. Smith v. Lewis, 3 B. M., 231.

3. That the C. N. O. & T. P. R. R. Co., was agent of plaintiff. L. & N. R. R. Co. v. Spalding, 7 Ky. Law Rep., 211.

4. That defendant had lien on the cattle for all freight charges. Caye v. Pools, assignee., 21 Ky. Law Rep., 1600.

5. That defendant's counterclaim was correctly plead. Civil Code, sec. 96, subsec. 1.

6. That there can be no counterclaim in a reply to a counterclaim in answer. Civil Code, sec. 111, subsecs. 2, 3; Procter v. Johnson, 16 Ky. Law Rep., 60; Mount v. L. & N. R. R. Co., 2 Ky. Law Rep., 221; Brown v. Phillips, 3 Bush, 356.

OPINION OF THE COURT BY CHIEF JUSTICE BURNAM—AFFIRMING.

This action was instituted by the appellant, Claude M. Thomas, against the appellee, the Frankfort & Cincinnati Railway Company, under section 181 of the Civil Code, for the possession of 116 head of feeding cattle, which he alleged were wrongfully detained from him, and for $100 in damages. The defendant answered on December 6, 1897, that at 8:30 a. m. the plaintiff, through his agent, the Cincinnati, New Orleans & Texas Pacific Railway Company, delivered to it at Georgetown, Ky., in the usual course of business, three cars of cattle to be shipped over its line to Paris, Ky.; that it paid the agent to the plaintiff $201 freight reported to be due thereon; that it transported the

three cars over its line from Georgetown to Paris, their destination, and that its charges were $12, which had never been paid; and that it had a lien for the $201 paid to the Cincinnati, New Orleans & Texas Pacific Railway Company, and for its own charges, amounting in the aggregate to $213; and that it had refused to surrender the possession of the cattle until this amount was paid—and asked that it be adjudged a lien upon the cattle, and for a sale of a sufficient number to satisfy its bill. The plaintiff replied that on the 2d day of December, 1897, he had contracted with the Memphis & Charlestown Railroad Company to transport from Decatur, Ala., to Paris, Ky., over its own and connecting lines, 116 head of cattle, which were to be shipped in three cars at the agreed price of $60 per car load, or $180 for all; that the cattle were to be delivered at Paris, Ky., on Friday, December 3, 1897; that either the Memphis & Charlestown Railroad Company was authorized to make this contract for a through shipment by its connecting lines, or that the connecting lines, by acceptance of the freight, ratified the contract made with him by the Memphis & Charlestown Railroad Company; that the delivery of the cattle to him at Paris, Ky., had been delayed between fifty and sixty hours in excess of the time agreed upon; and that during this interval they had suffered from want of food and water to such an extent as to damage them at least $250, which he pleaded by way of set-off and counterclaim. Plaintiff filed with his reply, and as a part thereof, a bill of lading, which was delivered to him by the Memphis & Charlestown Railroad Company on the delivery of the cattle to them, and which contains the following stipulation: "I agree that the said Memphis and Charlestown R. R. Co. is only bound to carry said live stock to its freight station at ——, and there have the same ready to be de-

livered and unloaded by the consignee or upon his orders, or to such company or carrier (if the same is to be forwarded beyond said station) whose lines may be considered as forming a part of the route to the destination to which said stock is consigned; and I expressly agree that the responsibility and liability of said Memphis and Charlestown R. R. Co., and any and all connecting lines or companies as common carriers shall cease at the end of their respective roads or routes. . . . I further agree that I will load, unload or transfer said stock at my own risk and expense, and that in the event of accidents or delays from any cause whatever, I will, at my own expense, feed, water and take care of said stock, or cause the same to be done for me." The bill of lading does not set out the alleged or any agreement as to the price for which the cattle were to be transported. The defendant filed a general demurrer to the reply, which was sustained, and, plaintiff declining to plead further, judgment was entered for the defendant, and plaintiff has appealed.

The reply contains no allegation that the Frankfort & Cincinnati Railroad Company ever authorized the Memphis & Charleston Railroad Company to contract for it for a through rate on the stock at $60 a car from Decatur to Paris, or that it had any knowledge of such alleged contract when it received these cars from the Cincinnati, New Orleans & Texas Pacific Railway Company at Georgetown, Ky. And there is certainly nothing in the mere acceptance by them of these cars to authorize the inference that it ratified the alleged parol contract for a through rate of $180, as it had no right, under the law, to refuse to receive from a connecting line cars of such line loaded with freight which is ordinarily transported between railroad companies according to the proper and usual course of bus-

iness. 5 Encyl. of Law (2d Ed.), 160, and authorities there cited. As the bill of lading is silent as to the charges at which the stock was to be transported, and appellee had no information of the alleged special parol contract, the law implies an undertaking to carry at the usual and ordinary rate for which such services are performed, and there is no allegation in the reply that the charge of $213 was in excess of the usual and ordinary rate. See Georgia R. Co. v. Murray (Ga.), 11 S. E., 779. And a carrier has a lien on freight transported by it for the usual customary charges of such transportation. And this lien covers charges which a connecting carrier has advanced to the preceding carrier. See 6 Cyc., 502; Caye v. Pool's Assignee (108 Ky., 124, 21 R., 1600), 55 S. W., 887, 49 L. R. A., 251. Nor will the lien be affected by the fact that the previous carrier has been in default by reason of damage to the goods. See Bowman v. Hilton, 11 Ohio, 303, and Ray on Negligence of Imposed Duties, 864. There is no allegation of negligence on the part of appellee after the receipt by them of the cars from either connecting carrier at Georgetown, Ky. Besides, the claim for damages in this case is based upon the alleged contract of the Memphis & Charlestown Railroad Company to deliver the cattle in Paris, Ky., on Friday, December 3, 1897, whilst the bill of lading, which is made a part of the reply, contains no such stipulation, but only undertakes to carry the cars to the end of their line and deliver them to the connecting carrier. The law is well settled that in the absence of a special contract by the carrier to deliver stock at a point beyond its line, it is not liable for negligence after its delivery to the connecting carrier. See L. & N. R. Co. v. Cooper (19 R., 1152), 42 S. W., 1134; Bryan v. M. & P. R. Co., 74 Ky., 597; L. & N. R. Co. v. Tarter (19 R., 229), 39 S. W., 698; Elliott on Railroads, sec. 433; Ire-

land v. Mobile & Ohio R. Co., 105 Ky., 400, 20 R., 1586, 49 S. W., 188, 453. In the case of Boogs, &c., v. Martin, 52 Ky., 239, the entire shipment was by one vessel from New Orleans to Louisville. There was no question of the payment by the delivering carrier of charges to the preceding carrier, and therefore has not application to the facts of this case. But it was there held that a carrier had a lien on goods carried, which he might detain until the freight was paid.

For reasons indicated, the judgment is affirmed.