ATCHISON, T. & S. F. RY. CO. v. BELL *et al.*

No. 858.    Opinion Filed January 9, 1912.

(120 Pac. 987.)

**CARRIERS—Charges—Validity of Special Contract.** The agent of an interstate railway and carrier contracted with a shipper to transport certain shipments of live stock from a point in Arkansas to a point in Oklahoma. Said shipments had to pass over the lines of the initial carrier and of one other interstate carrier. The junction point of these railways was in Kansas. No through rate had ever been filed with the Interstate Commerce Commission and published as required by law, but the initial carrier had on file and published at the time an interstate rate on shipments from the point of origin of the shipments involved to its junction point with the delivering carrier, and the delivering carrier had on file and published at said time a rate from the junction point to point of destination. The through rate contracted for by the initial carrier was less than the sum of the combined rates of the two carriers. **Held** that, by reason of section 6 of the interstate commerce act (Act Feb. 4, 1887, c. 104, 24 St. 380 [U. S. Comp. St. 1901, p. 3156]), as amended by Act approved June 29, 1906 (Act June 29, 1906, c. 3591, sec. 2, 34 U. S. St. at L. p. 586 [U. S. Comp. St. Supp. 1909, p. 1153]) the special contract was void, and that the delivering carrier, who on delivery of the consignment to it by the initial carrier had paid to the initial carrier its freight charges in accordance with its tariff on file regulating rates from the point of origin to the junction, was entitled upon delivery of the shipments to the consignee to collect and receive from the consignee the freight charges so paid to the initial carrier and its freight charges in accordance with the tariff of the delivering carrier on file, prescribing the rate from the point of junction to the point of destination.

(Syllabus by the Court.)

*Error from District Court, Kay County;*
*W. M. Bowles, Judge.*

Action by Charles C. Bell and another against the Atchison, Topeka & Santa Fe Railway Company. Judgment for plaintiffs, and defendant brings error. Reversed and remanded.

*Cottingham & Bledsoe* and *Geo. M. Green,* for plaintiff in error.

*W. B. Clark,* for defendants in error.

HAYES, J. This case was commenced in the district court of Kay county by defendants in error against plaintiff in error upon a petition which alleges two causes of action; the first of which is for freight charges amounting to $979.16 on fourteen cars of sheep shipped from Horatio, Ark., to Ponca City, Okla., and the second of which is $144.88, freight charges on two cars of sheep shipped from Horatio, Ark., to Ponca City, Okla. The trial in the court below was upon an agreed statement of fact, and it is therefore unnecessary to state in detail the allegations of the pleadings. The substantial facts, concisely stated, are: That on October 13, 1906, defendants in error entered into a contract with the agent of the Kansas City Southern Railway at Horatio, Ark., that rate on sheep from Horatio, Ark., to Ponca City, Okla., if shipped during the month of October, 1906, would be $90 per car, double deck cars or two single cars as one double deck, minimum weight of single deck car to be 12,000 pounds. Relying on the statement of said railway company's agent, defendants in error, on the 13th day of October, 1906, purchased fourteen cars of sheep and shipped them from Horatio, Ark., to Ponca City, Okla., and on the 21st day of October, 1906, they purchased two more cars and shipped them from said station in Arkansas to the same destination in Oklahoma. Said shipments were made in single deck cars, and they were consigned by defendants in error to themselves, all charges to be collected at destination; and all of the shipments were to be made and were made over the Kansas City Southern Railway Company to Pittsburg, Kan., where they were delivered

to the Atchison, Topeka & Santa Fe Railway Company, plaintiff in error herein, by which company they were transported from Pittsburg, Kan., to Ponca City and there delivered to defendants in error. After delivery of the sheep to defendants in error, the agent requested and demanded of them $979.16 as freight charges on the fourteen cars of sheep shipped on the 13th day of October, 1906, and $139.88 freight charges on the two cars shipped on the 21st day of October, 1906, and $5 feed charges on the last two cars shipped, making a total sum of $1,124.04 demanded by agent of plaintiff in error as freight and feed charges on said shipments, which defendants in error refused to pay, upon the ground that they had entered into a contract with the agent of the Kansas City Southern Railway Company, the initial carrier, to transport said sheep and lay the same down at Ponca City, Okla., for $720, which amount defendants in error tendered to the agent of plaintiff in error, who refused to accept same, and now prosecutes this action to recover the freight in the amount demanded by it immediately after delivery of the sheep.

It is admitted that on the first shipment of fourteen cars of sheep, plaintiff in error paid to the Kansas City Southern Railway Company the sum of $433.16 for its services in transporting said fourteen cars from Horatio, Ark., to Pittsburg, Kan., where the plaintiff received said shipments; and that it also paid the further sum of $61.88 charges by said railway company for its services in transporting the second shipment of two cars between said points, and also a feed charge of $5. It is agreed that at the time these shipments were made plaintiff in error and the Kansas City Southern Railway Company had no joint interstate tariff rate in force between Horatio and Ponca City, but that the plaintiff in error did have an interstate tariff duly published and in force between Pittsburg, Kan., and Ponca City, Okla., which shows a rate on single deck car loads of sheep to be 32 1/4 cents, with a minimum weight of 12,000 pounds; that at the time the shipments were made, the Kansas City Southern Railway Company had an interstate tariff, duly published, between Horatio, Ark., and Pittsburg, Kan., showing the rate of single deck car loads of sheep to be 29 1/2 cents per hundred pounds, with a mini-

mum weight of 12,000 pounds. It is admitted that the sum demanded by plaintiff in error as freight on said shipments is the same in amount as the freight under the regular tariff rates of said Kansas City Southern Railway Company from Horatio, Ark., to Pittsburg, Kan., and of plaintiff in error from the last-named town to Ponca City, Okla., and that said tariffs were on file in the office of the Interstate Commerce Commission, and had-been duly published according to law at the time of said shipments, but that defendants in error did not know at the time of said shipments that said tariff rates existed, and that they relied on the statements of said agent of the Kansas City Southern Railway Company at Horatio, Ark., as to what the rates were.

It was the contention of defendants in error in the court below that they were liable to plaintiff in error for only the amount of $720, the amount agreed upon by the agent of the Kansas City Southern Railway Company and defendants in error as the charges of freight for said shipments. Plaintiff in error, on the other hand, insisted in that court and insists in this court that such agreement was and is void; and that defendants in error are liable for the regular rates under the tariff duly filed with the Interstate Commerce Commission and published; and that it is entitled to recover said sum paid by it to the initial carrier under said tariffs and the amount of its freight under the regular tariff for transporting said shipments from the junction in Kansas to destination in Oklahoma.

The trial court decided, as a matter of law, that the contract between defendants in error and the initial carrier is void as being in conflict with the interstate commerce act; that the $5 feed charges was legitimate; and that plaintiff in error was entitled to recover the freight charges for the services rendered on its own line, and accordingly rendered judgment in favor of plaintiff in error for an amount equal to the freight under the regular tariff on its line from Pittsburg, Kan., to Ponca City, Okla., and the additional sum of $5 feed charges, making a judgment in the total sum of $———.

The only point in controversy in this case is whether plaintiff in error is entitled to recover the amount paid by it to the Kansas

City Southern Railway Company under the regular tariff rate filed by it for services in transporting shipments of this character from Horatio, Ark., to the junction point in Kansas. A decision of this question necessarily involves an application of provisions of the federal interstate commerce acts then in force.

Counsel for defendants in error concede that a delivering carrier has a right to collect from the consignee the lawful charges made by the forwarding carrier, and paid by the delivering carrier in the course of the shipment, and this principle seems to be well supported by the authorities. *Loewenberg v. Ark., etc., Ry. Co.*, 56 Ark. 439, 19 S. W. 1051; *Moore & Son v. Henry et al.*, 18 Mo. App. 35; *Potts v. N. Y. & N. Eng. Ry. Co.*, 131 Mass. 455, 41 Am. Rep. 247; *Thomas v. Frankfort & C. Ry. Co.*, 116 Ky. 879, 76 S. W. 1093, 25 Ky. Law Rep. 1051; *Moses v. P., etc.*, 5 Wash. 595, 32 Pac. 488. If the initial carrier in the instant case would have had the right to charge and collect from the consignors, who were also the consignees, freight on its line of road from the origin of the shipment to the junction on plaintiff in error's line under its schedule of rates filed with the Interstate Commerce Commission, then clearly plaintiff in error could pay such freight charges upon receiving the shipment and would have the right to recover therefor from the defendants in error. If the agreement of the initial carrier to carry for less than the tariff rates would not preclude it from collecting its regular tariff rate, it is unimportant whether or not the delivering carrier had notice of the agreement between the initial carrier and defendants in error to carry for less than the tariff rates. The record is silent as to whether plaintiff in error had such notice when it received the shipment and paid the initial carrier its charges.

Section 6 of the interstate commerce act as amended by act approved June 29, 1906, (Act June 29, 1906, c. 3591, sec. 2, 34 U. S. Stat. at L. p. 586 [U. S. Comp. St. Supp. 1909, p. 1153]) requires that every common carrier, subject to the provisions of the act, shall file with the Interstate Commerce Commission and print and keep open to public inspection schedules showing all the rates, fares and charges for transportation between different points on its own route and between points on its own route and

points on the route of any other carrier, when a through route and joint rates have been established.

"If no joint rate over the through route has been established, the several carriers in such through route shall file, print and keep open to public inspection as aforesaid the separately established rates, fares, and charges applied to the through transportation."

Such schedules are required to be printed in large type, and copies for the use of the public are required to be kept posted. in two conspicuous places in every depot, station, or office of such carrier where passengers or freight are received for transportation. The same section prohibits any carrier from demanding, collecting, or receiving a greater or less or a different compensation for the transportation of passengers or property than the rate of fares and charges specified in the tariff filed and in effect at the time of transportation, and prohibits any carrier from refunding or remitting in any manner or by any device any portion of such rates, fares, and charges. By other sections of the statute penalties are prescribed for violation of the foregoing provisions. These provisions of this statute and similar provisions of the acts of which the act of 1906 is amendatory, have been frequently interpreted by the federal Supreme Court, whose decisions are controlling upon this court. *Armour Packing Co. v. United States,* 209 U. S. 56, 28 Sup. Ct. 428, 52 L. Ed. 681; *Tex. & Pac. Ry. Co. v. Abeline, etc.,* 204 U. S. 426, 27 Sup. Ct. 350, 51 L. Ed. 553, 9 Am. & Eng. Ann. Cas. 1075; *Tex. & Pac. Ry. Co. v. Mugg,* 202 U. S. 242, 26 Sup. Ct. 628, 50 L .Ed. 1011.

In the Armour Packing Company case, the packing company was indicted and convicted in one of the district courts of the United States for obtaining from a common carrier an unlawful concession in rates from the published and filed rates on a portion of the route of a foreign shipment. The rate paid by the packing company was, at the time the contract was entered into between the carrier and the packing company, the duly filed and published rate, but, before the shipment was made, another and higher rate for a part of the through route was filed with the Interstate Commerce Commission and published. The court held that the only rate the carrier was authorized to charge and collect

was the rate in force as filed and published with the commission at the time of the shipment, and a conviction of the packing company because as a shipper it secured a less rate than said published rate was sustained.

The Mugg case was an action to recover damages by reason of negligence of the carrier in misquoting the rates for carrying coal on an interstate shipment from Arkansas to Texas, on which quoted rate the plaintiff in that case had relied and had sold the coal at the price based on the rate given. At destination, the carrier collected freight charges according to the tariff filed with the commission and published. The shipper sued, alleging negligence in the giving of the rate and asked judgment for his damages. The federal Supreme Court, reversing a judgment of the Supreme Court of Texas in favor of plaintiff in that action, held that there could be no recovery. These decisions establish that the only rate for which an interstate carrier can contract to transport an interstate shipment and the only rate which a shipper can secure for such a shipment is the one established as by law provided, to wit, the rate provided by the schedule of tariff filed with the Interstate Commerce Commission and published. Neither the shipper nor the carrier may vary from such filed and published rates.

In the case at bar, no through rate had ever been established. When defendants in error applied for a rate to the local agent of the initial carrier, the agent was unable to inform them of the rate until he communicated with the general live stock agent of the carrier at Kansas City; whereupon, he gave the rate thereafter made the basis of their contract, which is lower than the rates provided by the schedules of tariffs conceded to have been filed with the Commission and published at the time of the transaction. The only rates the initial carrier was authorized to charge and the only rate the shipper was permitted to secure under the law was a rate in accordance with the filed tariff of the initial carrier to the junction in Kansas and a rate in accordance with the filed tariff of the delivering carrier from the junction in Kansas to the destination in Oklahoma. These rates are not subject to be varied by special contract between the shipper and carrier. The initial car-

rier could not collect from the delivering carrier upon delivering the shipments less than its filed published rate, and the delivering carrier could not pay less, without violating the law. A mistake of the agent of a carrier in quoting to a shipper the rate on an interstate shipment lower than the authorized published rate does not authorize the shipper to receive from the delivering carrier the shipment upon payment of the contract rate, or where he has paid the tariff rate, exceeding the rate agreed upon, to recover back the excess paid over the contract rate. *A., T. & S. F. Ry. Co. v. Holmes,* 18 Okla. 92; 90 Pac. 22. Nor does it prevent the carrier from recovering the authorized published rate. *Texas & Pac. Ry. v. Leslie* (Tex. Civ. App.) 131 S. W. 824; *S. A. & A. P. Ry. Co. v. Clements & Anderson,* 20 Tex. Civ. App. 498, 49 S. W. 913.

*St. Louis Southwestern Ry. Co. v. Gramling* (Ark.) 133 S. W. 1129, is a case very similar to the one at bar. In that case the agent of the initial carrier contracted with the shipper for a lower rate on an interstate shipment than the tariff filed and published authorized, and collected said lesser sum in advance. The delivering carrier delivered the shipment to the consignee, who was also the consignor, as in the case at bar, without collecting the balance due according to the published tariff. The initial carrier thereupon brought action to recover said balance on the freight according to the published tariff, and its right to recover was sustained by the court.

In a recent case from the Supreme Court of Kansas, the plaintiff made inquiry at one of defendant's stations in Kansas for the freight rate on wheat in car load lots from the station in Kansas to a point in Texas and told the agent of the carrier that he desired such information in order to fix the price of wheat to a customer at the station in Texas. In answer to his inquiry, the agent informed him it was 31 cents per hundredweight. Relying upon this information, the plaintiff fixed his price on his wheat and sold two car loads and shipped it over defendant's line to the point in Texas, where an additional charge of 12½ cents per hundredweight was made and collected, making 43½ cents per hundredweight for the shipment, which was the regular tariff rate on

file with the Interstate Commerce Commission. Plaintiff brought his action to recover damages alleged to have been suffered by him by reason of the false statement of the initial carrier's agent that the rate of freight was 31 cents per hundredweight, when in fact it was 43½ cents per hundredweight, but his right to recover was denied. *Schenberger v. Union Pac. Ry. Co.,* 84 Kan. 79, 113 Pac. 433, 33 L. R. A. (N. S.) 391. Of the many other cases that support this rule are the following: *Savannah, Florida & Western Ry. Co. v. Bundick,* 94 Ga. 775, 21 S. E. 995; *Church v. Minneapolis & St. L. Ry. Co.,* 14 S. D. 443, 85 N. W. 1001; *C., R. I. & P. Ry. Co. v. Hubbell,* 54 Kan. 232, 38 Pac. 266; *Haurigan v. C. & N. W. Ry. Co.,* 80 Neb. 132, 113 N. W. 983, 16 Am. & Eng. Ann. Cas. 450.

The reason upon which the rule is sustained is well stated in *Poor Grain Co. v. Chicago, B. & Q. R. Co.,* 12 Interst. Com. R. 418, in the following language:

"The question of the liability of carriers for the mistakes of their agents in quoting freight rates to shippers seems not to be open to further discussion. * * * While shippers rely largely upon the rates quoted by freight agents and billing clerks, the law charges them with knowledge of the lawful rates. And they will not be heard before this commission to claim the benefit of a lower than the lawful rate on the ground that the railroad clerk has made a mistake in quoting a lower rate for a particular shipment. To permit shippers to impute negligence to carriers in quoting rates, and on that ground to enjoy the rate quoted instead of paying the lawfully published rate, would open a broad and ample way for the payment of rebates, and for other unlawful practices, and might, in its practical results, work a repeal of the essential features of this legislation."

The agent of the Kansas City Southern Ry. Co. by mistake agreed to ship at a rate the tariff did not authorize. The only rate he could bind his company for was the rate of his principal from Horatio, Ark., to the junction in Kansas, and of plaintiff in error from that point to the point of destination, as provided in the filed and published tariffs, for said rates were the only rates filed and published as required by law at the time of the shipment. The object of the law is not only to punish carriers that give discriminatory rates, and favor some shippers to the injury

of others, but to prevent the shipper from obtaining the benefits of any violation of the law by the carrier. The primary purpose of the law is to secure equality of rates. This can be done only when every avenue for evasion of the law is closed. Upon first thought, it shocks one's sense of fairness to know that the requirements of the law are such that the shipper, who, although charged by the law with knowledge of the filed and published rates, it is known in most instances, has no knowledge of the rates prescribed by the filed and published tariffs, and because of his lack of experience in such matters, is unable to determine from such schedules the freight rate in any given case, and who, therefore, is in a large measure dependent upon the information that he can obtain from the agent of the carrier negligently given, has no remedy against the carrier to enforce his contract, when he has been given an incorrect rate by the agent of a carrier, based upon which he has made contracts and suffered damages thereby. But Congress, no doubt, considered that it was better that the few cases of injustice that might arise from this source should occur than that the opportunity for evading the law and permitting rebating and favoritism in rates under the plea of mistakes of the agents, a different rule would afford, should obtain. To sustain the judgment of the trial court, counsel for defendants rely principally upon *Pond-Decker Lumber Co. v. Spencer,* 86 Fed. 846, 30 C. C. A. 430, and *Railway Co. v. Dismukes,* 94 Ala. 131, 10 South. 289; but both of these cases were disapproved in *Armour Packing Co. v. United States,* 82 C. C. A. 135, 153 Fed. 1, 14 L. R. A. (N. S.) 400 ,and the Dismukes case was expressly overruled in *Southern Ry. Co. v. Harrison,* 119 Ala. 539, 24 South. 552, 43 L. R. A. 385, 72 Am. St. Rep. 936, and the doctrine of both of these cases, in so far as it has any bearing upon the question here involved, is against the overwhelming weight of the decided cases.

The judgment of the trial court is reversed and the cause remanded, for further proceedings in accordance with the views of this opinion.

All the Justices concur.