HARVEY & CO. v. COPPER RIVER & N. W. RY. CO.

(Third Division. Valdez. October 8, 1915.)

No. 723.

CARRIERS ☞200—COMMERCE—CONTRACTS—RAILROADS.

> The plaintiff applied to the agent of the carrier and was given a wrong rate for carrying freight. He paid the excess demanded and brought this suit to recover damages. He recovered a judgment in the commissioner's court, but on appeal the district court *held* that a shipper has no remedy against the carrier for damages suffered by being given a rate lower than the tariff rate, by mistake, based upon which he has made contracts and suffered damages thereby.

In this case the plaintiff corporation alleges that in September, 1914, it desired to ship a mixed carload of potatoes and onions from Seattle, Wash., to McCarthy; that the station agent of defendant railway company at McCarthy informed plaintiff that the rate on said freight would be $39.30 per ton; that, upon arrival of said freight at McCarthy, plaintiff was informed by said agent that the rate quoted was a mistake, and he was charged and compelled to pay, and did pay, $59.30 per ton therefor, amounting in the aggregate to $334.70, which he paid over the rate given him by said station agent originally. Plaintiff on the trial of said case, alleging special damages by reason of the negligence of defendant in not quoting the correct rate, amended his complaint by asking damages in the sum of $846.79.

Defendant demurred to the complaint, and the demurrer was overruled. Defendant answered, admitting practically all the facts, but set out that the defendant railway company is a common carrier; that the Alaska Steamship Company, operating its steamers from Seattle to Cordova, is a common carrier; that the defendant and said Alaska Steamship Company during the times mentioned were connecting carriers, the connecting point of the two said carriers being the port of Cordova, Alaska, and were such carriers within the meaning of the act of Congress approved February 4, 1887 (24 Stat. 379, c. 104), entitled "An act to regulate commerce" and acts amendatory thereof; that at the time of said ship-

ment to plaintiff, and long prior thereto, the legal tariff rate had been duly fixed, published, posted, and filed with the Interstate Commerce Commission at the sum of $59.30 per ton on carload lots of potatoes and onions moving from Seattle in a continuous shipment or carriage to McCarthy.

The case was tried to a jury, and a verdict rendered in favor of plaintiff and against defendant for $400, and defendant appeals. The case is presented on an agreed statement of facts. The facts agreed upon are practically as set forth in the plaintiff's complaint and in the defendant's answer. It appears that the mistake was made by defendant, or one or more of its agents or employés.

Lyons & Ritchie, of Valdez, for plaintiff.
R. E. Capers, of Cordova, for defendant.

BROWN, District Judge. The judgment in this case must be reversed, and the plaintiff's complaint dismissed. This question has been decided definitely by the Supreme Court of the United States in a number of cases.

In the case of Atchison, T. & S. F. Ry. Co. v. Bell, 31 Okl. on page 247, 120 Pac. on page 990 (38 L. R. A. [N. S.] 351), the court, speaking of the Interstate Commerce Law, says:

"The primary purpose of the law is to secure equality of rates. This can be done only when every avenue for evasion of the law is closed. Upon first thought it shocks one's sense of fairness to know that the requirements of the law are such that the shipper, who, although charged by the law with knowledge of the filed and published rates, it is known in most instances has no knowledge of the rates prescribed by the filed and published tariffs, and because of his lack of experience in such matters is unable to determine from such schedules the freight rate in any given case, and who, therefore, is in a large measure dependent upon the information that he can obtain from the agent of the carrier negligently given, has no remedy against the carrier to enforce his contract, when he has been given an incorrect rate by the agent of a carrier, based upon which he has made contracts and suffered damages thereby. But Congress, no doubt, considered that it was better that the few cases of injustice that might arise from this source had better occur than that the opportunity for evading the law, and permitting rebating and favoritism in rates under the plea of mistakes of the agents, a different rule would afford, should obtain."

See, Illinois Cent. Ry. Co. v. Henderson El. Co., 226 U. S. 441, 33 Sup. Ct. 176, 57 L. Ed. 290; N. Y. Cent. v. U.

S., 212 U. S. 504, 29 Sup. Ct. 309, 53 L. Ed. 624; Railway Co. v. Albers Co., 223 U. S. 594, 32 Sup. Ct. 316, 56 L. Ed. 556.

The judgment in the commissioner's court will therefore be reversed, and the case remanded, with instructions to dismiss plaintiff's complaint.