**MISSOURI, K. & T. R. CO. v. ASHINGER.**

No. 6926—Opinion Filed Dec. 19, 1916.

Rehearing Denied Feb. 6, 1917.

(162 Pac. 814.)

(Syllabus by the Court.)

**Carriers—Carriage of Passengers—"Interstate Passenger."**

A. purchased a ticket over defendant's railroad from Oklahoma City, Okla., to Colbert, Okla., intending to proceed from the latter place to Achille. a point within this state. Upon reaching Atoka, Oklahoma, he decided to proceed to Denison, Tex., and tendered defendant the unused portion of his ticket entitling him to passage as an intrastate passenger from Atoka to Colbert and cash fare at the interstate rate from Colbert to Denison, Tex., which was refused, and defendant demanded of him in addition to his ticket one cent per mile from Atoka to Colbert, which, with the ticket and the cash tendered by plaintiff, would equal the published tariffs for one continuous passage from Atoka to Denison. Plaintiff refused to pay this amount and was evicted from the train at Colbert, and sued for damages for the eviction. Held, that plaintiff was an "interstate passenger" from Atoka to Denison, Tex., and was required to pay the rate prescribed by the published tariffs for the journey from Atoka to Denison, and upon his refusal to pay an extra one cent per mile from Atoka to Colbert, in addition to the ticket and the cash fare tendered from Colbert to Denison, defendant was entitled to eject him from its train, and, in the absence of circumstances other than the mere fact of removing him from the train, plaintiff is not entitled to recover.

Error from District Court, Oklahoma County; W. R. Taylor, Judge.

Action by Frank C. Ashinger against the Missouri, Kansas & Texas Railway Company. There was a judgment for plaintiff, and defendant brings error. Reversed.

Clifford L. Jackson, W. R. Allen, and M. D. Green, for plaintiff in error.

Jno. H. Wright and Clarence J. Blinn, for defendant in error.

HARDY, J. Defendant in error brought suit for damages for the alleged wrongful

act of plaintiff in error in ejecting him from one of its passenger trains. The parties will be referred to as they appeared in the trial court.

Plaintiff alleges, in substance, that on December 13, 1913, he purchased a ticket from defendant at its Oklahoma City office to Colbert, Okla., and on said day took passage upon one of its trains; that the train upon which he was traveling was several hours late in reaching Colbert, and by reason thereof the hour was too late for plaintiff to transact his business on that day and, believing he would not be able to secure proper hotel accommodations, he decided to proceed from Colbert, Okla., to Denison, Tex., and tendered to defendant the interstate rate of fare from Colbert to Denison, which was refused, and plaintiff was thereupon ejected from the train. Defendant answered denying each and every material allegation, and further alleged that by virtue of an act of Congress April 4, 1887, entitled an act to regulate commerce, commonly known as the Interstate Commerce Act, and the various acts amendatory thereof, it had filed with the Interstate Commerce Commission tariffs and schedules governing the charges for transportation of passengers from points in the state of Oklahoma to points in the state of Texas, and alleged that plaintiff at the time complained of was an interstate passenger, traveling from Oklahoma City to a point in the state of Texas, and the defendant was required by the said laws of the United States to collect from plaintiff the fares prescribed by its said schedule. The case was tried to a jury, which returned a verdict in favor of plaintiff, and defendant prosecutes error.

The principal question involved is whether plaintiff was an intrastate passenger from Oklahoma City to Colbert, and whether, upon his determination to continue his journey upon the same train from Atoka to Denison, defendant had a right to demand of him the interstate rate of fare to his destination. The trial court submitted to the jury as a question of fact whether defendant was an interstate or an intrastate passenger. Exceptions were saved to the instructions submitting this issue, and defendant requested the court to instruct a verdict in its favor, which request was refused.

The law is clear that, if plaintiff was an interstate passenger, defendant had the right to demand and receive from him the interstate rate and, upon his refusal to pay same, to remove him from its train. This view of the law was entertained by the trial court, but it is urged that the court misconceived what constitutes an interstate passenger. Section 6 of the Interstate Commerce Act

(Act Feb. 4, 1887, c. 104, 24 Stat. 380 [U. S. Comp. St. 1913, sec. 8569]) requires all carriers to file with the Interstate Commerce Commission tariffs showing rates for the transportation of passengers or property between the points named in such tariff, and the act prescribes penalties for any deviation therefrom, and there is no distinction made between rates prescribed for transportation of passengers and those prescribed for the transportation of property; the purpose and intent of Congress being the same in reference to both classes of tariffs. Speaking of this provision of the law, the Supreme Court of the United States, in Louisville & Nashville R. Co. v. Maxwell, 237 U. S. 94, 35 Sup. Ct. 494, 59 L. Ed. 853, L. R. A. 1915E, 665, says:

"Under the Interstate Commerce Act, the rate of the carrier duly filed is the only lawful charge. Deviation from it is not permitted upon any pretext. Shippers and travelers are charged with notice of it, and they as well as the carrier must abide by it, unless it is found by the Commission to be unreasonable. S. Covington & Cinn. R. Co. v. Covington et al., 235 U. S. 537, 35 Sup. Ct. 158, 59 L. Ed. 350 [L. R. A. 1915F, 792]; Ligon v. St. L. & S. F. R. Co. [184 Mo. App. 187], 168 S. W. 647: St. L., I. M. & S. R. Co. v. Spriggs [113 Ark. 118], 167 S. W. 96."

This court has not heretofore had occasion to consider the effect of this legislation as applied to tariffs prescribed for the transportation of passengers, but in a number of cases has had under consideration the question as to whether rates different from those prescribed by such tariffs for the transportation of property might be enforced or confer any rights upon the person to whom said rate was quoted and has invariably held that the rates and tariffs for the transportation of property must be governed by the rates shown upon the published tariffs prepared and filed with the Interstate Commerce Commission as required by said act. S. L., I. M. & S. R. Co. v. McNabb, 63 Okla. ___, 162 Pac. 811; St. L. & S. F. R. Co. v. Pickens, 51 Okla. 455, 151 Pac. 1055; A.. T. & S. F. R. Co. v. Bell, 31 Okla. 238, 120 Pac. 987, 38 L. R. A. (N. S.) 351.

In Southern Pacific Terminal Co. v. Interstate Commerce Commission, 219 U. S. 498, 31 Sup. Ct. 279, 55 L. Ed. 310, the Supreme Court affirmed a decree dismissing both bill and cross-bill in a suit to enjoin the enforcement of an order of the Interstate Commerce Commission requiring carriers to desist from giving undue preference to a shipper. E. H. Young, the shipper, had caused certain shipments of cotton seed and cakes to be brought into Texas and shipped to Galveston, where upon arrival they were ground into meal and later sold and shipped

to foreign ports. It was contended that the Interstate Commerce Commission had no jurisdiction, as the matter sought to be regulated was intrastate and foreign commerce, and not interstate commerce. The court denied this contention, and in the opinion said:

"It makes no difference, therefore, that the shipments of the products were not made on through bills of lading, or whether their initial point was Galveston or some other place in Texas. They were all destined for export, and by their delivery to the Galveston, Harrisburg & San Antonio Railway they must be considered as having been delivered to a carrier for transportation to their foreign destination; the terminal company being a part of the railway for such purpose. The case therefore comes under Coe v. Errol, 116 U. S. 517, 6 Sup. Ct. 475, 29 L. Ed. 715, where it is said that goods are in interstate, and necessarily as well in foreign commerce, when they have 'actually started in the course of transportation to another state or been delivered to a carrier for transportation.'"

In Railroad Commission v. Worthington, 225 U. S. 101, 32 Sup. Ct. 653, 56 L. Ed. 1004, it was sought to enjoin the enforcement of an order of the State Railroad Commission fixing the rate on certain shipments of coal from the coal fields in Ohio to the ports of Huron and Cleveland on Lake Erie. The railroad company contended that such shipments were interstate. The coal was ordinarily shipped upon bills of lading consigned to the shipper or to another for him and accumulated in large quantities at Huron. At the time of shipment, the final destination had not always been determined, and from time to time the coal was put on vessels and shipped out of the state. The order of the state commission was enjoined on the ground that the shipments were interstate. We quote the following statement from the opinion:

"By every fair test the transportation of this coal from the mine to the upper lake ports is an interstate carriage, intended by the parties to be such, and the rate fixed by the commission, which is in controversy here, is applicable alone to coal which is thus, from the beginning to the end of its transportation, in interstate carriage, and such rate is intended to and does cover an integral part of that carriage, the transportation from the mine to the Lake Erie Port, the placing upon the vessel, and the trimming or distributing in the hold, if required, so that the vessel may complete such interstate carriage."

In Texas & New Orleans R. R. v. Sabine Tram Co., 227 U. S. 111, 33 Sup. Ct. 229, 57 L. Ed. 442, the shipments originated at Ruliff, Tex., and were moved by railroad to Sabine, Tex., under waybills covering the movement

between the two places mentioned. Upon arrival the consignee was notified and directed that the shipments be unloaded from the cars upon the dock, and the lumber was thereupon transported to points in Europe. The question presented was whether such shipments were intrastate or foreign commerce. It was contended that such shipments were not foreign commerce, because they were shipped to Sabine and delivered to the consignee, and that the shipment was terminated and the subsequent transportation to foreign ports was an entirely new and distinct movement; but this contention was overruled. The court says:

"The determining circumstance is that the shipment of the lumber to Sabine was but a step in its transportation to its real and ultimate destination in foreign countries. In other words, the essential character of the commerce, not its mere accidents, should determine. It was to supply the demand of foreign countries that the lumber was purchased, manufactured, and shipped, and to give it a various character by the steps in its transportation would be extremely artificial. Once admit the principle, and means will be afforded of evading the national control of foreign commerce from points in the interior of a state. There must be trans-shipment at the seaboard; and, if that may be made the point of ultimate destination by the device of separate bills of lading, the commerce will be given local character, though it be essentially foreign."

The same question was again presented in Commission v. T. & P. R. Co., 229 U. S. 336, 33 Sup. Ct. 837, 57 L. Ed. 1215. This was a case in equity to declare void certain orders of the railroad commission of Louisiana and to restrain the collection of penalties for the alleged violation thereof on the ground that the shipments in question were interstate commerce. The shipments consisted of logs and staves shipped from a point in Louisiana to New Orleans to a named consignee. Upon arrival, notice was given to the consignee, who directed that the shipment be delivered to a steamship for transportation to foreign countries. It was sought by this device to secure the benefit of the local intrastate rate. In delivering its opinion the court says:

"The principle enunciated in the cases was that it is the essential character of the commerce, not the accident of local or through bills of lading, which determines federal or state control over it; and it takes character as interstate or foreign commerce when it is actually started in the course of transportation to another state or to a foreign country. The facts of the case at bar bring it within the ruling. The staves and logs were intended by the shippers to be exported to foreign countries, and there was no interruption of their transportation to their destina-

tion except what was necessary for trans-shipment at New Orleans."

The recent case of Baer Bros. Mercantile Co. v. Denver & Rio Grande R. Co., 233 U. S. 479, 34 Sup. Ct. 641, 58 L. Ed. 1055, involved the jurisdiction of the Interstate Commerce Commission to pass upon the reasonableness of a flat rate from Pueblo to Leadville, Colo., on beer received from St. Louis, Mo., and delivered at Leadville, where no through rate or through route had been established and where the shipment from Pueblo to Leadville was covered by a local waybill and the shipment treated as an intrastate shipment. It was said in the opinion:

"But while there was no through rate and no through route, there was in fact a through shipment from St. Louis, Mo., to Leadville, Colo. Its interstate character could not be destroyed by ignoring the points of origin and destination, separating the rate into its component parts, and, by charging local rates and issuing local waybills, attempting to convert an interstate shipment into intrastate transportation."

The same construction of the law has been adopted by the Interstate Commerce Commission. Colorado Free Pass Investigation, 26 Interst. Com. Com'n R. 491; Kanotex Rev. Co. v. A., T. & S. F. R. Co., 34 Interst. Com. Com'n R. 271.

In South Covington & Cleveland R. Co. v. City of Covington et al., 235 U. S. 537, 35 Sup. Ct. 158, 59 L. Ed. 350, L. R. A. 1915F, 792, it was held that the traffic carried on by a Kentucky street railway corporation in connection with an Ohio corporation, operating on the Ohio side of the Ohio river in transporting passengers upon continuous and connecting tracks across an interstate bridge by means of continuous trip and a single fare under practically the same management, was interstate commerce. We quote from the opinion:

"This court has repeatedly held that whether given commerce is of an interstate character or not is to be determined by what is actually done, and, if the transportation is really and in fact between states, the mere arrangements of billing or plurality of carriers do not enter into the conclusion. Here is an uninterrupted transportation of passengers between states, on the same cars, and under practically the same management, and for a single fare. We have no doubt that this course of business constitutes interstate commerce. Texas & N. O. R. Co. v. Sabine Tram. Co., 227 U. S. 111, 33 Sup. Ct. 229, 57 L. Ed. 442; St. Louis, S. F. & T. R. Co. v. Seale, 229 U. S. 156, 33 Sup. Ct. 651, 57 L. Ed. 1129, Ann. Cas. 1914C, 156; Railroad Commission v. Worthington, 225 U. S. 101, 32 Sup. Ct. 653, 56 L. Ed. 1004; Omaha & C. B. Street R. Co. v. Interstate Commerce Commission, 230 U. S. 324, 336, 33 Sup. Ct. 890, 57 L. Ed. 1501, 1506, 46 L. R. A. (N. S.) 385."

A case that appears to be in point is that of Illinois Central R. Co. v. Holman, 106 Miss. 449, decided by the Supreme Court of Mississippi January 12, 1914, and found reported in 64 South. 7. The plaintiff Holman and his wife held mileage books which were good for transportation between points entirely within the state of Mississippi, but which could not be used in connection with or as any part of an interstate trip. They boarded the train at Varden and traveled to Grenada, where they changed cars and took another train for Memphis, Tenn. After leaving Grenada, Holman tendered his mileage book, stating that he was going to Memphis. The conductor informed him that he could not travel to Memphis upon the mileage and upon Holman's request accepted same for transportation to Sardis, Miss., a point about 50 miles from Memphis. At Sardis, Holman purchased a ticket from that station to Memphis, which he tendered to the conductor; but the conductor refused to accept the tickets unless he would first pay his fare in cash from Grenada to Sardis. Refusing to do this, he was ejected from the train and brought an action for damages. The Supreme Court of Mississippi held that he was an interstate passenger from Grenada to Memphis, and in its opinion said:

"Mr. Holman was an interstate passenger. He boarded the train at Grenada to go to Memphis; his destination was outside this state. The provisions of the act of Congress cannot be nullified by evasions, or subterfuge; nor could the railroad company escape the penalties for its violation by shutting its eyes to the fact that Mr. Holman was attempting to pay a part of his fare from Grenada to Memphis, with mileage issued for advertising and not paid for in cash. The mere stepping off the train at Sardis did not change the passenger from an interstate passenger to an intrastate passenger." Ligon v. St. L. & S. F. R. Co., supra; St. L., I. M. & S. R. Co. v. Spriggs, supra.

From the foregoing decisions, we gather the rule to be that the question whether a shipment is or is not of an interstate character is not determined by the fact that it may be consigned from one point within a state to another point within the same state from which it is subsequently forwarded to a point beyond the state of its origin, but it takes its character as interstate or foreign commerce when it is actually started in the course of transportation to another state or to a foreign country or has been delivered to a carrier for such transportation; and the rule governing transportation of passengers

is that, where a passenger enters upon a journey to a point without the state in which his journey commences, and in fact continues, that journey without interruption to his ultimate destination, he is an interstate passenger and subject to the payment of the rates prescribed by the published tariffs on file with the Interstate Commerce Commission. The question in this case, under this view of the law, is whether plaintiff at the time he was ejected from said train was in fact an interstate passenger. He testified that upon leaving Atoka he decided to continue his journey from that place to Denison, Tex., and tendered defendant the unused portion of his ticket from Atoka to Colbert and 25 cents in money, which was the interstate rate from Colbert to Denison, and the defendant refused to accept it, but demanded of him, in addition to the ticket and the cash tendered, an extra cent per mile from Atoka to Colbert, which would equal the interstate rate for one continuous passage between Atoka and Denison. Upon his refusal to pay this amount, he was ejected from the train at Colbert, the destination named in his ticket. From plaintiff's own statement he was clearly an interstate passenger, and, upon his refusal to pay the legal amount from Atoka to Denison, defendant was entitled to eject him from its train, provided his expulsion was not attended with any other circumstance than the mere act of his removal, and there was none.

As held in the Holman Case, his status as an interstate passenger was determined when he boarded the train at Atoka with the announced intention of proceeding from there to Denison, Tex., and he was not entitled to be carried any portion of his interstate journey for less than the published rate, and, should the defendant permit this to be done, it would subject itself to the penalty prescribed by the act of Congress, which, as has been repeatedly held by the Supreme Court of the United States, cannot be evaded by any device or subterfuge.

The judgment is therefore reversed.

All the Justices concur.