**WALSKY CONSTRUCTION CO., Appellant,**

v.

**SEA–LAND SERVICES, INC., Appellee.**

**No. 3392.**

Supreme Court of Alaska.

April 21, 1978.

---

Mark A. Sandberg, Merdes, Schaible, Staley & DeLisio, Inc., Anchorage, for appellant.

Paul W. Koval, Graham & James, Anchorage, for appellee.

Before BOOCHEVER, Chief Justice, and RABINOWITZ, CONNOR, BURKE and MATTHEWS, Justices.

## OPINION

MATTHEWS, Justice.

■ The major question presented by this appeal is whether a common carrier regulated under the Interstate Commerce Act may be liable to a shipper for misrepresentation of its freight rates. We hold, in accordance with controlling federal precedent, that the common carrier is exempt from such liability.

### I

Taking, as we must, where summary judgment is granted, the facts most favorable to the losing party,[1] the following situation is presented. Sea-Land Services, Inc., a common carrier, solicited Walsky Construction Co. for its shipping business and quoted a certain freight rate. Relying on that quote, Walsky shipped with Sea-Land.

In fact, the rate quoted was significantly lower than Sea-Land's published tariff rate. Walsky paid Sea-Land's bills in accordance with the rate it had been quoted. When a dispute arose as to the remaining amount due, Sea-Land sued Walsky for the outstanding freight charges, the difference between the freight charges computed at the tariff rate and the freight charges it quoted to Walsky.

Walsky denied owing any sum to Sea-Land. As an affirmative defense and counterclaim, Walsky asserted that Sea-Land had misrepresented its freight rates and that Walsky had relied on the misrepresentation and had been damaged. Sea-Land moved for summary judgment, contending that the amount of its claim was correct and that, as a matter of law, claims against a common carrier for misrepresentation of freight rates are not permissible. Walsky opposed the motion; however, it was granted.

### II

■ It is a federal question whether a common carrier may be liable for misrepresentation of its freight rates, and we must apply federal law.[2] Section 6(7) of the Interstate Commerce Act forbids an interstate carrier from charging any rate different from that set out in its published tariff.[3] Uniformity in charges for transportation is the policy of this section.[4] In an unbroken line of cases, the federal courts have held that this policy precludes a shipper from holding a common carrier to its

---

1. *Clabaugh v. Bottcher*, 545 P.2d 172 (Alaska 1976).

2. See *Missouri P. R. Co. v. Elmore & Stahl*, 377 U.S. 134, 136, 84 S.Ct. 1142, 1143, 12 L.Ed.2d 194, 197 (1964).

3. 49 U.S.C. § 6(7) provides, in part:
   No carrier . . . shall . . . charge or demand or collect or receive a greater or less or different compensation for such transportation of passengers or property, or for any service in connection therewith, between the points named in such tariffs than the rates, fares, and charges which are specified in the tariff filed and in effect at the time; nor shall any carrier refund or remit in any manner or by any device any portion of the rates, fares, and charges so specified, nor extend to any shipper or person any privileges or facilities in the transportation of passengers or property, except such as are specified in such tariffs.

4. *Pittsburgh C. C. & St. L. R. Co. v. Fink*, 250 U.S. 577, 581, 40 S.Ct. 27, 63 L.Ed. 1151, 1153 (1919); *Louisville & N. R. Co. v. Maxwell*, 237 U.S. 94, 97, 35 S.Ct. 494, 495, 59 L.Ed. 853, 855 (1915); *Southern Pacific Company v. Miller Abattoir Company*, 454 F.2d 357, 359–60 (3rd Cir. 1972).

word.[5] Not by counterclaim,[6] setoff,[7] or separate claim[8] upon theories of breach of contract,[9] estoppel,[10] negligent misrepresentation,[11] or intentional misrepresentation[12] may the shipper obtain a rate lower than the published tariff.[13] The hardship of this rule on the unsuspecting shipper who often has neither the time nor the expertise necessary to determine the applicable tariff is obvious and has been recognized.[14] It may,

in fact, be bankrupted by relying on a false quote. However, it is also a hardship on a shipper for its competitor to receive a lower freight rate than is available to the shipper. Section 6(7) of the Interstate Commerce Act, as interpreted by the foregoing authorities, reflects a congressional judgment that the latter hardship outweighs the former. It is not within our power to reexamine this choice.[15]

**5.** *Pittsburgh, C. C. & St. L. R. Co. v. Fink, supra* note 4, at 250 U.S. 581, 40 S.Ct. 27, 63 L.Ed. 1153; *Illinois Central R. Co. v. Henderson Elev. Co.*, 226 U.S. 441, 33 S.Ct. 176, 57 L.Ed. 290, 292 (1913); *Texas & P. R. Co. v. Mugg & Dryden*, 202 U.S. 242, 244, 26 S.Ct. 628, 629, 50 L.Ed. 1011, 1013 (1906); *Southern Pacific Company v. Miller Abattoir Company, supra* note 4 at 359; *Silent Sioux Corp. v. Chicago North Western Ry. Co.*, 262 F.2d 474, 475 (8th Cir. 1959); *Pettibone v. Richardson*, 126 F.2d 969, 970 (7th Cir. 1942).

**6.** *Southern Pacific Company v. Miller Abattoir Company, supra* note 4 at 359; *Pettibone v. Richardson, supra* note 5 at 970.

**7.** See cases cited in footnote 6, *supra*.

**8.** *Illinois Central R. Co. v. Henderson Elev. Co., supra* note 5 at 226 U.S. 441, 33 S.Ct. 176, 57 L.Ed. 292; *Texas & P. R. Co. v. Mugg & Dryden, supra* note 5 at 202 U.S. 242, 26 S.Ct. 628, 50 L.Ed. 1011; *Silent Sioux Corp. v. Chicago & North Western Ry. Co., supra* note 5 at 474.

**9.** *Louisville & N. R. Co. v. Central Iron & C. Co.*, 265 U.S. 59, 64, 44 S.Ct. 441, 68 L.Ed. 900, 902 (1924); *New York Cent. & H. R. Co. v. York & Whitney Co.*, 256 U.S. 406, 407, 41 S.Ct. 509, 510, 65 L.Ed. 1016, 1020 (1921); *Pittsburgh, C. C. & St. L. R. Co. v. Fink, supra* note 4 at 250 U.S. 581, 40 S.Ct. 27, 63 L.Ed. 1153; *Southern Pacific Company v. Miller Abattoir Company, supra* note 4 at 359–60.

**10.** *United States v. Western P. R. Co.*, 352 U.S. 59, 60, 77 S.Ct. 161, 163, 1 L.Ed.2d 126, 139 n. 20 (1956); *Louisville & N. R. Co. v. Central Iron & C. Co., supra* note 9 at 265 U.S. 64, 44 S.Ct. 441, 68 L.Ed. 902; *Pittsburgh, C. C. & St. L. R. Co. v. Fink, supra* note 4 at 250 U.S. 581, 40 S.Ct. 27, 63 L.Ed. 1153.

**11.** *Illinois Central R. Co. v. Henderson Elev. Co., supra* note 5 at 226 U.S. 441, 33 S.Ct. 176, 57 L.Ed. 292; *Texas & P. R. Co. v. Mugg & Dryden, supra* note 5 at 202 U.S. 242, 26 S.Ct. 628, 50 L.Ed. 1012; *Southern Pacific Company v. Miller Abattoir Company, supra* note 4 at 359–60; *Silent Sioux Corp. v. Chicago North Western Ry. Co., supra* note 5 at 475; *Pettibone v. Richardson, supra* note 5 at 970.

**12.** *F. Burkhart Mfg. Co. v. Fort Worth & D. C. Ry. Co.*, 149 F.2d 909, 910 (8th Cir. 1945).

**13.** A shipper may have a cause of action against a carrier for a breach of the contract of carriage, e. g., for physical damage to the goods. Such a cause of action, however, would not affect the determination of the basic tariff rate. *Chicago & N. W. R. Co. v. Lindell*, 281 U.S. 14, 50 S.Ct. 200, 74 L.Ed. 670 (1930); *In Re Penn Central Transportation Company*, 477 F.2d 841 (3rd Cir. 1973); *Railway Express Agency v. Smith*, 116 F.Supp. 609 (E.D.S.C. 1953); *Pennsylvania R. Co. v. Musante-Phillips, Inc.*, 42 F.Supp. 340 (N.D.Cal.1941); *Gilbert Carriers Corp. v. Oneonta Dress Co.*, 35 A.D.2d 695, 314 N.Y.S.2d 692 (1970); *Chicago & N. W., Etc. v. Thoreson Food Prod.*, 71 Wis.2d 143, 238 N.W.2d 69 (1976); 49 U.S.C. § 20(11).

**14.** *Louisville & N. R. Co. v. Maxwell, supra* note 4 at 237 U.S. 97, 35 S.Ct. 495, 59 L.Ed. 855; *Southern Pacific Company v. Miller Abattoir Company, supra* note 4 at 359; *Harvey & Co. v. Copper River & N. W. Ry. Co.*, 5 Alaska 371, 372 (1915); *Atchison, T. & S. F. Ry. Co. v. Bell*, 31 Okl. 238, 120 P. 987, 990 (1912).

**15.** A rule holding the carrier to its bargain while imposing a substantial fine seems to be more just than the present rule; it would place the risk of loss on the responsible party rather than on the innocent one and still serve to deter preferential pricing. Walsky suggested at oral argument, but not in its briefs, that the policy of uniformity of freight rates would not be undercut if the measure of damage allowed the shipper were the difference between the tariff rate of the common carrier in suit and the lowest tariff rate of any other common carrier for the items shipped between the same points. This assumes, of course, that there is no uniformity of tariff rates between competing common carriers. We have no knowledge whether that assumption is correct. If the assumption is incorrect, there would be no difference between rates and no damages could be assessed. If it is correct, it does seem difficult to perceive significant harm to competition between shippers by permitting one shipper to obtain, in effect, a preferential rate through an action for

## III

Walsky also contends that there exists a genuine issue of material fact with regard to the amount due. We have carefully considered each of Sea-Land's arguments, taking all the facts with reasonable inferences drawn in favor of Walsky and against Sea-Land. *Clabaugh v. Bottcher, supra.* We find that Walsky has raised no specific facts showing that there was a genuine issue for trial; thus, the court's order granting summary judgment was appropriate.

**AFFIRMED.**

---

misrepresentation, if the result is the same as a tariff rate available to all shippers from another common carrier. While Walsky's suggestion seems to be plausible, we are unable to evaluate it except on a superficial basis. It involves questions of national transportation policy on which we have neither the breadth of knowledge nor legal authority to determine.