### OREGON–WASHINGTON R. & NAV. CO. v. PACIFIC CONTINENTAL GRAIN CO.
#### No. L–12719.

District Court, D. Oregon.
Dec. 2, 1940.

Maguire, Shields & Morrison and A. C. Spencer, Jr., all of Portland, Or., for plaintiff.

Jay Bowerman, of Portland, Or., for defendant.

JAMES ALGER FEE, District Judge.

 There are involved in this case three hundred causes of action. Each relates to the rate to be charged upon a single car of grain shipped from the interior of Oregon to Portland, Oregon, and eventually to an interstate or foreign point. The actual intention of the shipper at the time of the initial commitment of the particular car of grain to a carrier at the interior point constitutes the determinative test as to whether an intrastate or interstate rate should be paid. Since the billing was in each instance to Portland, only the intrastate rate was originally paid. Upon discovery that all of these particular lots eventually moved in interstate or foreign commerce the carrier sues to recover the difference between the amounts paid and sums calculated on the basis of the higher interstate rate.

 The existence of a particular intention is a question of fact. If it was the intention to gather the grain at Portland, or condition it and eventually ship it in interstate or intrastate commerce as the exigency demanded, then the intrastate rate would prevail. Even if there were simply a general design to transmit the whole in interstate or foreign commerce this scale of charges alone would be applicable. However, where there was an original and continuing intention conceived at the point of origin of a particular carload shipment of grain that the shipment should be transported to a destination in another state or foreign country then the higher rate scale prevails.

No direct testimony of intention at the point of origin has been given by defendant. The facts relating to defendant's business and the course of each of these cars of grain has been outlined by an elaborate stipulation. However, since the court has not had the benefit of oral testimony upon the issue nor the opportunity to observe the bearing and demeanor of witnesses a conclusion as to any particular car of wheat seems arbitrary and the result of fitting together certain stipulated factors (which may or may not have been governed by chance) like the pieces of a jig saw puzzle. There is doubt as to whether an illusive intention can be properly so established. However, the court can only appraise, and decide upon the factors upon which the parties have themselves stipulated.

 Many of these stipulated facts have little or no bearing upon the intent at the time of the initiation of a particular shipment. The bills of lading read in each instance to Portland. But this element is not controlling if there actually was an intent to commit particular grain, either directly or after conditioning, to an interstate or foreign journey. On the other hand, plaintiff has selected only the cars which actually were shipped by water carrier to a port in another state or country. The mere fact that the wheat within a short time after original shipment found its way into interstate or foreign commerce may raise an inference that there was a primary intention at the time of shipment that the grain was at that moment launched on a continuous journey to a destination outside the state of Oregon and in the absence of other evidence this would be controlling.

 Comparatively little of the grain received by defendant was resold and transhipped to a point in the state of Oregon. Therefore, defendant had a general intention of shipping the entire amount purchased to points outside Oregon. The only factor then of value is the existence of an intention of defendant to store a particular car load at Portland or on the other hand ship the parcel outside the state with only the delay caused by conditioning or awaiting more grain of a similar type or the exigencies of transportation of other grain.

The whole trend of the shipment of these particular cars convinces that the course of business was such that except in occasional instances defendant intended that the wheat should continue in interstate or foreign commerce as soon as possible.

■ The quantity of grain placed in defendant's hands on consignment contract is not important in this case because it is stipulated in almost every instance that defendant gave the shipping orders. If these orders had been given by the consignor his intention would have been the governing factor. But where the defendant gave the orders the consigned grain can not be differentiated from the purchased.

The protein and moisture content of a particular shipment seem to have little weight with defendant according to the stipulation. The general variety, grade and condition of the grain apparently was more important. The protein and moisture content cannot be known definitely until the government inspection has been held at Portland, while the other factors can be known with fair accuracy by inspection at the point of origin. Thus the latter furnish no particular criterion of the intention at time of shipment.

Wherever then the defendant ordered out a particular car of grain from the interior and within a few days after arrival loaded it upon a vessel for shipment to a point outside the state to apply on joint account of itself and its business associates it must be held the original and continuing intention was to ship in interstate or foreign commerce. Likewise where defendant shipped a car and so loaded it upon a ship with little delay to fulfill the terms of a contract drafted before the shipment was initiated the interstate rate should prevail. If defendant built up a grader order to meet a contract previously entered for the purpose of processing the grain to meet the terms thereof and shipped a car from the interior which it immediately placed in the grader order and thereafter the whole contents of the grader order was shipped outside the state with only such delay as processing required, the intrastate rate would not apply.

■ Where a car lay in storage for a period of time, or where shipment was made on contracts subsequently entered or where the carload was applied in small quantities to a variety of shipments on the other hand, it would be reasonable to suppose that the defendant had only the intention to ship to Portland for storage until a reasonable opportunity presented itself to make shipment in accordance with its general contemplation that all grain would be finally committed to interstate or foreign shipment.

■ In this case there is another factor which clearly portrays the intention of defendant as to the greater number of cars involved. Congress provided for disposal of surplus wheat of the Pacific Northwest.[1] Pursuant to the terms of this Act, North Pacific Emergency Export Association was organized and defendant became a member. A marketing agreement was entered between the Secretary of Agriculture and the Export Association and defendant as one of the members, relating to the disposal of this surplus wheat. Without detailing the complicated arrangement the court determines that defendant intended at time of initial shipment that each carload of wheat handled under said agreement should immediately be exported, irrespective of the date when the contract for shipment was signed. The whole structure of the arrangement evinced a purpose on the part of the government and defendant to launch each car so handled in foreign commerce.

Findings and judgment in accordance with the annexed schedule may be prepared.