**300 PIN BALL, SLOT OR MARBLE MACHINES et al.**

**v.**

**STATE ex rel. MILLS.**

**No. 35440.**

Supreme Court of Oklahoma.

Dec. 1, 1953.

Rehearing Denied Dec. 22, 1953.

W. L. Steger, Durant, Max R. Rosenfield, Elihu E. Berwald, Dallas, for plaintiffs in error.

R. H. Mills, County Atty., Bryan County, Durant, for defendant in error.

PER CURIAM.

This is an appeal from orders of confiscation made in three causes of action filed in the District Court of Bryan County which were consolidated.

The appellants owned 300 pin ball machines which were located in the State of Texas and most of them in operation there. The laws of the State of Texas did not prohibit the operation of such machines but the effective date of an act of the legislature of the State of Texas was about at hand and it was deemed necessary in order to prevent confiscation of these machines in the State of Texas to take them out of that state. The machines were brought in interstate shipment across the boundary line between Oklahoma and Texas and at different places stored at or near Durant in close proximity to the border line. All the machines were shipped by truck and bore address labels "To—Taylor Warehouse, Durant, Oklahoma."

The machines all have an electrical contrivance by which they can be operated if set therefor only for amusement or they can be set for gambling purposes and under such a setting would be in violation of the laws of the State of Oklahoma. Most of the machines as stored at or near Durant were crated. Some of them were not. None of them appeared to be set for use in violation of the laws of this state.

In the course of the trial the defendants below, appellants here, offered evidence tending to prove that they did not intend to use the machines in the State of Oklahoma but intended to continue their shipment to purchasers in other states where they would not be prohibited and subject to confiscation; that the machines had merely come to a temporary rest in Oklahoma; that sale and contract for delivery of some of the machines to other states had been accomplished before the machines came into Oklahoma, and that contracts of sale for the balance were under process of accomplishment. This character of evidence was excluded by the court.

Appellants contend, as is conclusively shown, that these machines are not illegal in any respect in other states; it is also contended that they are not illegal subject matter here when set to play for amusement only; and that they were all in interstate commerce and for this reason not confiscable.

The State contends that all of the machines are slot machines and the possession thereof in Oklahoma is illegal whether set for amusement or gambling purposes and that none of them were in interstate commerce.

■■ Intention not to use the machines in the State of Oklahoma and the intention to continue the shipment to other states where they would not constitute illegal subject matter and be subject to confiscation however operated are pertinent to the issue of whether or not the machines had come to rest in Oklahoma and the interstate character thereof destroyed or were still in interstate commerce. If the owners and consignors were bona fide in their alleged intention not to use these machines in this state and in their intention to continue the shipment outside this state temporary stoppage within the state would not destroy the interstate character of the shipment and would not subject the machines to confiscation. Missouri, K. & T. R. Co. v. Ashinger, 1916, 63 Okl. 120, 162 P. 814, L.R.A.1917D, 1180; Oregon-Washington R. & Nav. Co. v. Pacific Continental Grain Co., D.C., 38 F.Supp. 230; 60 A.L.R. 1479 and 1484; 155 A.L.R. 944 to 948. The exclusion of testimony tending to prove these facts was erroneous and prejudicial.

Reversed with directions to vacate the orders of confiscation and proceed in conformity with the views herein expressed.

HALLEY, C. J., JOHNSON, V. C. J., and WELCH, ARNOLD, and DAVISON, JJ., concur.

WILLIAMS, J., concurs in conclusion.

CORN, O'NEAL and BLACKBIRD, JJ., dissent.

ARNOLD, Justice (concurring specially).

I think that the record, stipulations of the parties and statements made at oral argument conclusively show that the owners of the pin ball machines did not intend to use them in the State of Oklahoma but intended to continue their shipment to purchasers in other states where their operation would not be prohibited by law.

That the machines are valuable property, cannot be and is not denied.

The machines were merely at temporary rest in the State of Oklahoma, not having been taken from the possession of public service warehousemen, and the interstate character thereof had not ceased. See the cases cited in the majority opinion.

The interstate character of the shipment not having ceased the machines were not subject to confiscation and should be released for shipment out of the bounds of the State of Oklahoma.

CORN, Justice (Dissenting).

This case is an outgrowth of the consolidation of three cases in the lower court. The question to be determined is whether the 300 slot machines seized by the sheriff under proper search and seizure warrants can be confiscated under Title 21 O.S.1951 Sections 969, 972, 973, 974 and 976.

"§ 969. Possession, sale, or lease of slot machines or punch boards prohibited.—

"It shall be unlawful for any person to have in his possession any slot machine or punch board, or sell or solicit the sale, or take orders for the sale of, or lease or rent any slot machine or punch board in this State, * *."

"§ 972. Slot machines and punch boards declared gambling devices—Public nuisance—Abatement.—

"Every slot machine and every punch board, as defined in this Act, is hereby declared to be per se a gambling device, and each is hereby declared to be a public nuisance, * *."

"§ 973. Seizure of slot machines and punch boards—Confiscation, procedure for.—

"Every sheriff * * * in this State is hereby required to seize every slot machine * * * together with all money contained therein or used in connection therewith, * * *: and immediately following such seizure, such officer shall report same and give all facts in relation thereto to the county attorney of the county in which the seizure was made; and such county attorney shall, immediately following such report, file an application in the district court of his county in the name of the State of Oklahoma against the slot machine or punch board seized, * * *, and a prayer for judgment confiscating said slot machine and punch board and money * * * seized, and ordering the immediate destruction of said slot machine or punch board by the officer seizing the same * * *."

"§ 974. Officers' duties under act—Prosecutions.—

"It is hereby made the duty of every sheriff * * * to diligently do and perform the acts required under this Act * * *; and it is hereby made the duty of every county attorney to diligently do and perform the acts required of him under this Act and to diligently prosecute any person violating any of the provisions of said Act."

"§ 976. Failure of officers or prosecutor to perform duties under act—Removal—Punishment.—

"Any sheriff * * * or county attorney who shall fail to diligently do or perform the acts and duties required of him under this Act, in that he shall knowingly allow the violation of this Act * * *, shall be guilty of wilful neglect of duty and shall be removed from office * * *."

The facts are that 100 of the machines were found in two buildings in Colbert, twelve miles southwest of Durant, 38 in one building and 62 in the other. The other 200 were in the Taylor warehouse located in Durant. None of the machines seized in Colbert were tagged or crated.

A part of the 200 seized in Durant were crated and bore tags showing billing to Taylor warehouse, Durant, Oklahoma, from Corpus Christi, Texas. Those not crated had no indication of any destination placed thereon.

When these machines were seized they were claimed by a number of persons, to-wit: A. C. Dudley, C. W. Martin, W. W. McCallum, Weldon Denton, T. H. Barnes, Buck McGraw, Leonard Kollman, Wall-box Sales Company, a corporation, Morris Ledecker and Boyd Wylie, when they went into the United States District Court of the Eastern District of Oklahoma, and attempted to restrain the officers from making disposition of the same.

It appears from the record that the machines were hurriedly moved out of the State of Texas because the legislature of that state had made the ownership of such machines in the State of Texas a felony, and they did not care to run the risk of being caught in possession of the machines in that state.

The entire record shows that these machines were moved from the State of Texas and stored in the State of Oklahoma, and that none of several claimants had at that time any idea that they would be shipped to Georgia, as testified to, or any other state. The owners were hurriedly removing these machines from the State of Texas in order to evade the law and dodge the penalty that they might suffer if they were found with the machines in their possession in the State of Texas.

It is my belief, as these machines were found at rest in Oklahoma, without any label or tag or indication of any kind that they were in transit to some other state, the sheriff was acting under the mandates of our statute which required him to seize the machines and inform the County Attorney, whose duty it was to present the matter to the District Court and ask for an order to destroy said machines. If it be conceded that the owners had in mind (which of course they didn't) to dispose of the machines whenever and wherever they could find a place to put them, that does not relieve them of liability and does not deny the officers of the right to seize the machines as contraband property and destroy them, as required by law.

I realize that this court is not bound by the decisions of the Criminal Court of Appeals of the State of Oklahoma, but the decisions of the Criminal Court of Appeals are persuasive and throw considerable light on the question involved as to the law in this case.

In the case of State ex rel. Brett, County Attorney, v. Four Bell Fruit Gum Slot Machines, 196 Okl. 44, 162 P.2d 539, 541, it held that such machines as the ones in question in this case were illegal slot machines, as defined by our law, and were gambling devices and contraband and not capable of ownership or possession in Oklahoma, and that officers in possession of same, seeking an order to confiscate such machines, had no alternative, and the court had no alternative but to order their destruction. In the body of that opinion, we find the following:

"Section 973, supra, provides for a court hearing without a jury, which was approved as constitutional in Moore v. Brett, 193 Okl. 627, 137 P.2d 539, and expressly requires the trial court to find whether the devices being proceeded against are slot machines and expressly requiring, if the court finds that they are slot machines, that they be destroyed and the contents or things of value connected therewith otherwise disposed of. It was admitted by the Officers Club that these machines were slot machines and this being true, the statute left the trial judge no alternative than to order their destruction."

In the instant case it is admitted that these machines are gambling devices, and the District Court made a finding that said machines are gambling devices after the evidence in the case had been heard, the operation of one of the machines viewed and the court had considered all of the evidence in the case.

In view of the testimony and the findings of the trial court and the authorities, it is my judgment there can be no prop-

erty right in any of the machines in question; that they are gambling devices under our statutes, and there can be no legal right of possession of them within the State of Oklahoma.

I respectfully dissent.