A. W. Schenberger, *Appellee,* v. The Union Pacific
Railroad Company, *Appellant.*

No. 16,860.

### SYLLABUS BY THE COURT.

Carriers—*Negligent Misquotation of Rate—Interstate Commerce—Sale by Shipper Relying upon Quoted Rate.* The
plaintiff made inquiry at the defendant's station at Wake-
field, Kan., for the freight rate on wheat in carload lots from
Wakefield to New Braunfels, Tex., and told the agent that
this information was desired in order to fix the price to a cus-
tomer at New Braunfels. In answer to the inquiry the plain-
tiff was informed that the rate was 31 cents per hundred-
weight. Relying upon this information, the plaintiff fixed
the price and sold two carloads of wheat and shipped it
over the defendant's line to New Braunfels, when an addi-
tional charge of 12½ cents per hundredweight was made
and collected, making 43½ cents per hundredweight on the
shipment, which was the regular tariff rate on file with the
interstate commerce commission. The mistake in quoting the
rate was unintentional and not fraudulent. It is *held,* that
the provisions of the interstate commerce act govern the
transaction, and that the plaintiff can not recover.

Appeal from Clay district court. Opinion filed Feb-
ruary 11, 1911. Reversed.

*R. W. Blair, H. A. Scandrett,* and *B. W. Scandrett,*
for the appellant.

*F. B. Dawes,* and *R. C. Miller,* for the appellee.

The opinion of the court was delivered by

Benson, J.: This is an action to recover damages
alleged to have been suffered by the plaintiff by reason
of the false and fraudulent statements of its freight
agent that the rate for the transportation of wheat
in carload lots from Wakefield, Kan., to New Braunfels,
Tex., was 31 cents per hundredweight, when in fact
the regular rate was 43½ cents per hundredweight,
whereby the plaintiff suffered damages in the sum of

$150.25, being the difference between the rate quoted and the regular rate charged upon two cars of wheat sold and shipped in reliance upon the truth of the statement of the defendant's agent that the rate was 31 cents per hundredweight. The case was tried upon an agreed statement of facts, from which it appears that the plaintiff inquired of the defendant's agent at Wakefield, Kan., for the freight rate on wheat in carload lots from that station to New Braunfels, Tex., and informed the agent that he desired to know the rate in order to fix the price of wheat which he had an opportunity to sell at New Braunfels. The agent said that he could not give the rate, but would obtain it. Shortly afterward the agent received a letter from a general freight agent of the company advising him that the rate inquired about was 31 cents per hundredweight, and so stated to the plaintiff. Relying upon the information so obtained, the plaintiff fixed the price to his customer and sold to him two carloads of wheat, which was then shipped over the defendant's line to New Braunfels, and the plaintiff paid or offered to pay the rate named, viz., 31 cents per hundredweight. When the wheat arrived at the place of destination an additional charge of 12½ cents per hundredweight was made and collected, making 43½ cents per hundredweight on the shipment, which was the correct rate on file with the interstate commerce commission, being 12½ cents from Wakefield to Kansas City, and 31 cents from Kansas City to New Braunfels. The mistake in quoting the rate was unintentional, and was made without fraudulent intent. Judgment was rendered for the plaintiff as prayed for, and the defendant appeals.

The defendant relies upon the provisions of the interstate commerce act, its tariffs of freight rates between the places named having been filed with the interstate commerce commission. It was held in *Railway Co. v. Milling Co.*, 80 Kan. 141, and in *Railway*

Schenberger v. Railroad Co.

*Co. v. Refining Co.*, 83 Kan. 732, that the schedule of rates published and filed with the interstate commerce commission must govern. Any claim that such rate is unjust must be presented to that tribunal. This is not disputed by the plaintiff, but it is insisted that the claim is not based upon a contract for less than the regular schedule rates but upon a misrepresentation of such rates, that the interstate commerce act does not relieve a carrier from damages caused by its negligence and false representations in such matters, and that the action is not upon contract, but in tort. Can the plaintiff recover damages for a misrepresentation of the rate when he could not have recovered upon an express agreement for that rate? It is not necessary to inquire into the purposes and scope of the interstate commerce act. They have been elaborately considered and stated in decisions of the federal supreme court. The interpretation of the law by that tribunal appears to be decisive of this controversy. (*Gulf, Coloroad &c. Railway v. Hefley*, 158 U. S. 98; *Texas & Pacific Railway v. Mugg*, 202 U. S. 242; *Texas & Pac. Ry. v. Abilene Cotton Oil Co.*, 204 U. S. 426; *Armour Packing Co. v. United States*, 209 U. S. 56.)

In the Mugg case (202 U. S. 242) the action was to recover damages by reason of negligence in the misquotation of the rates for carrying coal on an interstate shipment, on which rates the plaintiff in that suit had relied and had sold the coal at a price based on the rate so given. The carrier collected freight charges according to the established rate as filed. The shipper sued, expressly alleging negligence in giving the rate as his ground of action. The supreme court of Texas ordered judgment for the plaintiff, but this was reversed and it was held that under the interpretation of the interstate commerce act by earlier decisions of the court, then reviewed and followed, there could be no recovery.

6—84 KAN.

It was held in the case of the Armour Packing Company (209 U. S. 56), in a prosecution for rebating, that although a contract for carriage of goods at a stipulated rate was valid when made, being the same as the tariff rate, yet it was a violation of the law to carry the goods at that rate after it had been superseded by a higher one made and filed as provided in the interstate commerce act. The court said that "neither shipper nor carrier may vary from the duly filed and published rate without incurring the penalty of the law." (p. 81.) Referring to the effect of the decision upon contracts for future delivery, the court said:

"It may be, as urged by petitioner, that this construction renders impossible the making of contracts for the future delivery of such merchandise as the petitioner deals in, and that the instability of the rate introduces a factor of uncertainty, destructive of contract rights heretofore enjoyed in such property. This feature of the law, it is insisted, puts the shipper in many kinds of trade at the mercy of the carrier, who may arbitrarily change a rate upon the faith of which contracts have been entered into. But the right to make such regulations is inherent in the power of congress to legislate respecting interstate commerce, and such considerations of inconvenience or hardship address themselves to the lawmaking branch of the government." (p. 81.)

The judgment is reversed, with directions to enter judgment for the defendant upon the agreed statement of facts.

WEST, J. (dissenting) : But for national legislation this action could be maintained. Such legislation has declared that all questions involving the propriety of an interstate rate must be presented to a federal tribunal. But has it in terms or by intendment prohibited the recovery of damages for loss on a shipment caused by a negligent misquotation of the tariff rate? True, it happens in this case that the damages asked

Schenberger v. Railroad Co.

equal the difference between the quoted and the tariff rates; but it is not sought, either in terms or in fact, to recover such damages as a difference, but to recover for a loss on the wheat shipped, caused by the careless misquotation of the rate. Had the prayer of the petition been broader and the evidence sufficient the allegations would support a verdict for punitive damages in an ordinary common-law action.

Recovery was not sought upon any contract or for the breach of any contract, for it is conceded that the law forbade a contract of shipment at the quoted rate. There was no payment of the tariff rate under protest, no attempt to clear the shipment of the carrier's lien, no complaint as to the legality or propriety of the tariff rate, which was paid.

Does the Mugg case control? That action was begun in a justice's court, where one is not held to orthodox strictness in pleading, but it sought to recover damages caused by reason of a misquotation *and by being forced to pay and paying the full rate under protest in order to obtain and deliver the coal.* The bill alleged:

"That plaintiffs' loss and damage in the sum aforesaid were occasioned by defendant's negligence in making and quoting to plaintiffs the said rates, on which rate quoted defendant knew plaintiffs relied and based their sales of the said three cars of coal shipped and sold thereafter, *and then forcing plaintiffs to pay a greater rate,* amounting in the aggregate to the sum of $140.18 on said three cars of coal, thereby causing plaintiffs' loss and damage *in the said sum.*" (*Texas & Pacific Railway v. Mugg,* 202 U. S. 242, 243.)

The Mugg case was not argued in the supreme court for the plaintiffs, and the decision merely and only adopts and applies that in the Hefley case (158 U. S. 98), and holds that it (the Mugg case) is ruled thereby. The Hefley case, by the Mugg decision, is expressly given this effect, and this only, so far as applicable here:

"The clear effect of the decision was to declare that

one who has obtained from a common carrier transportation of goods from one state to another at a rate, specified in the bill of lading, less than the published schedule rates filed with and approved by the interstate commerce commission, and in force at the time, whether or not he knew that the rate obtained was less than the schedule rate, is not entitled to recover the goods, or damages for their detention, upon the tender of payment of the amount of charges named in the bill of lading, or of any sum less than the schedule charges; in other words, that whatever may be the rate agreed upon, the carrier's lien on the goods is, by force of the act of congress, for the amount fixed by the published schedule of rates and charges, and this lien can be discharged, and the consignee can become entitled to the goods, only by the payment or tender of payment of such amount." (202 U. S. 245.)

The object of the legislation in question is to prevent favoritism and discrimination, and to bind shipper and carrier alike by the schedule rate, but it is not apparent that its further object is to bar action for damages caused by negligent misquotation. It is suggested that to permit recovery would in effect give the shipper transportation at less than the tariff rate. Logically this may be true, in a sense, but it is not legally true, for he has already paid the full rate and makes no complaint whatever concerning it. He is not seeking to recover money wrongfully extorted, but, having obeyed the law by paying the legal rate without protest, he now seeks to recoup his loss on the wheat which the negligent misquotation caused. He was careful and inquired the rate, stating that it would be his selling basis. Had it been correctly given he would not have lost; and because of this loss, caused by this carelessness, he sues. It is no previously planned scheme to circumvent the national law, but a *bona fide* attempt to make good for an actual loss suffered while obeying that very law. He is not complaining that he paid or had to pay the full rate, or seeking to recover any portion of it, but he is com-

Schenberger v. Railroad Co.

plaining that his proper obedience to the law still left him damaged by the carrier's negligence.

Congress evidently intended that both shipper and carrier should know the rate, and the latter is required to keep it posted so the shipper may know it. Not having done so, it was proper for the shipper to apply to the proper source for information, and under the circumstances it seems but common sense and common fairness to say that he had a right to rely thereon, provided such relying in no way involved an infraction of the law, and no decision thus far found makes it clear that, having complied with the federal statutes, he is restricted to a complaint under or concerning them in a national tribunal. His recovery can not be construed into a judicial invitation to bring similar actions, for we must presume that only in rare instances will such circumstances arise; but, if they should, that is no reason why redress should be denied.

Finally, it is urged that section 9 of the act of February 4, 1887 (24 U. S. Stat. at L. p. 382, 3 Fed. Stat. Ann. p. 833) withholds jurisdiction from state courts. This section provides that one claiming to be damaged by any common carrier may either make complaint to the interstate commerce commission or sue in any district or circuit court of the United States of competent jurisdiction, but he may not do both. But the preceding section provides that for any act done or omitted in violation of the statute in question the party damaged may recover the full amount of damages sustained, together with a reasonable counsel or attorney's fee, and the two sections together show that it is for such damages only that one must resort to the federal tribunals. Nothing in the entire act makes the negligent but unintentional misquotation of a rate unlawful.

Finding nothing in the statutes or in the decisions prohibiting the maintenance of this action, I believe the judgment should be affirmed.