**UNION PACIFIC RAILROAD COMPANY, a corporation, Plaintiff and Respondent,**

v.

**STERLING H. NELSON & SONS, INC., a corporation, dba Murray Elevators, Defendant and Appellant.**

**No. 14343.**

Supreme Court of Utah.

July 7, 1976.

Walter P. Faber and James A. Arrowsmith, of Watkins & Faber, Salt Lake City, for defendant and appellant.

J. C. Williams, Salt Lake City, for plaintiff and respondent.

ELLETT, Justice:

The defendant manufactures fish food and ships it to various customers in the United States and in Canada. It made a competitive bid to sell the product to the Canadian government, but before submitting the bid, it inquired of the plaintiff what the freight rate would be from Mur-

3. *In Re Kapperman*, 11 Cal.3d 542, 114 Cal. Rptr. 97, 522 P.2d 657 (1974).

ray, Utah, to the point of destination in Canada. The rate was quoted and used by the defendant in making its bid.

After many shipments were made and freight paid according to the schedule of charges originally given by the plaintiff to the defendant, it was discovered that the charges made were incorrect. The defendant refused to pay the additional charges and the plaintiff brought this action for the undercharge.

The defendant counterclaimed, alleging damages because of the negligence of the plaintiff in furnishing an incorrect freight rate. The court granted summary judgment to the plaintiff in the amount of $1,856.85 (the amount of undercharge), together with interest.

The defendant appealed and asserts that it is a denial of due process to prohibit it from recovering on its counterclaim.

There is no question about the requirement for payment by defendant of the correct freight rates which are filed with the Interstate Commerce Commission.[1] The case of In re Penn Central Transportation Company[2] held:

> Under the Interstate Commerce Act, freight charges incurred pursuant to a filed tariff are accorded a legally superior status: that of a law. The only defense which can be raised to a carrier's suit for these legal charges is that the services have been paid for, that the services were not rendered, that the services were charged under an inapplicable tariff schedule, or that the rates were unreasonable.

The question of the counterclaim in this case has been the subject of lawsuits all over the nation.[3] The case of *Pettibone v. Richardson*[4] is in point. The court there said:

> This appeal raises the following question: May a shipper who relies upon a misquotation of rates by a common carrier whose rates have been duly filed and published in accordance with Section 6(7) of the Act to Regulate Commerce, 49 U.S.C.A. § 6(7), recover damages, incurred by reason of his having to pay the correct and higher rate?

Plaintiff received cattle for sale and paid the freight quoted to him. He sold on a cost-plus basis including the quoted freight charges which he had paid. He then sued for damages.

> It is clear that the defendant, having sold the livestock on a cost-plus basis, has suffered a loss, but the decisions are definite to the effect that under the present state of facts the railroad is not liable for this loss. To allow the defendant to recover would, in substance, allow the railroad to grant a rebate.

> \*    \*    \*    \*    \*    \*

> The defendant is conclusively presumed to know the proper rates. . . . Therefore, the defendant had no right to rely on the railroad's quotation of rates, and no failure of duty on the part of the railroad renders it liable for defendant's loss.

Although the defendant's counterclaim relied upon the rates quoted by the railroad company, which were incorrect, *he must not only pay the correct rates to the railroad company, but he is without remedy against the railroad company for the damage he may have suffered in reliance upon the incorrect rates quoted. He is bound to pay the correct rates,*

---

1. *Louisville & Nashville R.R. v. Maxwell,* 237 U.S. 94, 35 S.Ct. 494, 59 L.Ed. 853 (1915); *Materials, Inc. v. The DeFonce Construction Corp.,* 31 Conn.Sup. 426, 332 A.2d 788 (1974).

2. 3 Cir., 477 F.2d 841, affrm'd 414 U.S. 885, 94 S.Ct. 231, 38 L.Ed.2d 137 (1973).

3. *Burkhart Mfg. Co. v. Fort Worth and D. C. Ry.,* 8 Cir., 149 F.2d 909; *Denver and Rio Grande W. R.R. Co. v. Marty,* 143 Colo. 496, 353 P.2d 1095 (1960).

4. 7 Cir., 126 F.2d 969 (1942).

and what the correct rates are he is bound to know. [Emphasis added.]

█ There is no legal duty on the part of the plaintiff herein to tell the shipper what the rates filed with the Interstate Commission are.[5] The rates which the defendant had to pay were the rates of a number of shippers combined, some being regulated by laws of the Dominion of Canada. The defendant had a duty to know what the laws were and he could not hold the plaintiff liable for a mistake in calculating the rates from Murray to a Canadian destination. If he wanted to know the rates he could have engaged the services of a lawyer skilled in interstate commerce matters and if that lawyer negligently gave the wrong rate, the action would lie against him.

The judgment is affirmed. Costs are awarded to the respondent.

MAUGHAN, J., concurs.

HENRIOD, Chief Justice (concurring):

I concur, except for the award of interest on an amount that the railroad did not charge, by virtue of its own mistake, which I think it never could have collected on any particular interest rate, lacking a contract. The statute does not provide an elixir for this type of inexactitude.

CROCKETT, Justice (concurring in result):

I agree in general with the position stated in the main opinion. The freight rate is fixed in the manner provided by law and the correct rate must be charged and paid. Otherwise, the purpose and effect of public supervision of rate structures could be circumvented by connivance. However, I think it is in error to say that the carrier (plaintiff Union Pacific Railroad Company) has *no duty to inform the shipper* (defendant here) as to what the correct rate is. It is my view that it does have such a duty, both legally and morally.[1] But if a mistake is made, it must be corrected.

It strikes me as unduly harsh and unrealistic to say that the shipper can hire an attorney or rate expert if he wants to know the correct rate. This is particularly impractical and onerous on small shippers or individual casual shippers. While it is somewhat rare that the need arises, if there is doubt about the correct rate as stated by the carrier, the Public Service Commission and the Interstate Commerce Commission both have personnel trained and available to assist in giving such information. Therefore, I concur in the Court's decision herein, limited by what I have said above.

TUCKETT, J., concurs in the views expressed in the opinion of Crockett, J.

5. *W. C. Goodnow Coal Co. v. N. Pac. Ry.*, 136 Minn. 420, 162 N.W. 519 (1917).

1. This is said notwithstanding cases such as *W. C. Goodnow Co. v. Northern Pac. R. Co.*, 136 Minn. 420, 162 N.W. 519.